Manuele Frank CRIVELLO, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00133–CR.

Court of Appeals of Texas,
Texarkana.

Argued July 28, 1999.

Decided Aug. 20, 1999.

Rehearing Overruled Sept. 21, 1999.

Melvyn Carson Bruder, Dallas, for appellant.

Karen Nelson, Asst. Dist. Atty., Dallas, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice ROSS.

Manuele F. Crivello appeals from a judgment of conviction for the offense of driving while intoxicated (D.W.I.). A jury determined his guilt, and the court assessed punishment at 120 days' confinement in the county jail, community supervision for two years, and a fine of $800.00. He contends that the court erred: (1) by permitting the State to elicit evidence of other crimes, wrongs, or acts; (2) by permitting the State to violate his constitutional right to confrontation by eliciting from a witness out-of-court statements made by the complainant (the complainant was not called to testify); (3) by admitting a videotaped recording into evidence; (4) by permitting the State to elicit from the arresting officer inculpatory statements made by the defendant; and (5) in failing to suppress the evidence obtained as a result of the defendant's arrest.

On the occasion in question, the Garland Police Department dispatched Officers C.A. Godwin and James Bresik to Doc Mama's Bar in response to a report of an alleged fight in the parking lot between a male and a female. While en route to that location, they were redirected to meet a female at an apartment, who claimed to be the female involved in the fight at Doc Mama's Bar. When they arrived at that location, they met a female who was "completely hysterical," crying, out of breath, frantic, and who appeared to have been assaulted. She told them she had been assaulted by her live-in boyfriend, who was very intoxicated and who had fled after dropping her off at the apartment. As the officers were continuing their investigation at the apartment, a vehicle entered the apartment complex parking lot, and the woman shouted, "There he is! There he

is!" The vehicle sped away from the apartment complex, and Godwin pursued in the police car. During the three-quarter-mile chase, Godwin noticed that the vehicle was being driven "erratically, speeding and straddling the center divider between the northbound and southbound lanes" of the street.

After stopping the vehicle, Godwin ordered Crivello out of his vehicle and ushered him to a level spot on a nearby parking lot. While walking to this spot, Godwin asked Crivello where he had been, where he was coming from, if he had been drinking, and if he had been involved in any kind of altercation or argument. Crivello said he had been at Doc Mama's Bar, had consumed several beers, and had been involved in an argument with his girlfriend. Godwin then administered field sobriety tests to Crivello, arrested him for D.W.I., and transported him to jail, where a videotape was made of him performing the sobriety tests. Before trial, Crivello moved to suppress evidence seized as a result of an illegal arrest and to suppress inadmissible statements made by him. The trial court denied this motion. The court did grant his motion in limine, in which he sought to exclude evidence of acts of misconduct, "to the extent that Officer Godwin may not relate to the jury the complainant's description of whether she was assaulted or not assaulted."

In his first point of error, Crivello contends the trial court erred by permitting the State to elicit evidence of other crimes, wrongs, or acts, in violation of Tex.R. Evid. 404(b).[1] Specifically, he argues that the court permitted the State to violate Rule 404(b) when it allowed the State to elicit

the following testimony from Godwin: that he responded to a "fight in progress at a bar called Doc Mama's Club"; that en route to that location they (he and his partner) "were told to drive to another location to make contact with one of the parties"; that they made contact with one of the parties involved in the fight at Doc Mama's Club; that the defendant was pointed out as the other person involved in the fight. Bresik later testified similarly regarding the fight, but also added that "she stated [she and the defendant] were at the bar and they had been drinking."

Crivello makes a number of arguments as to why the court erred in admitting this testimony. First, he contends that evidence of other crimes, wrongs, or acts is admissible under Rule 404(b) only if it establishes beyond a reasonable doubt that the accused committed such crime, wrong, or act and it relates to a specific matter in issue in the case. He argues that the State never established beyond a reasonable doubt that he was involved in the "fight in progress at a bar named Doc Mama's Club." Second, he argues that this testimony was not relevant, i.e., it did not relate to any matter that was in dispute. In connection with this argument, he cites *England v. State*, 887 S.W.2d 902 (Tex. Crim.App.1994), and *Jackson v. State*, 927 S.W.2d 740 (Tex.App.-Texarkana 1996, no pet.), for the proposition that evidence of crimes, wrongs, or acts is not admissible as "background" evidence under the theory that the jury is entitled to know the context in which the offense was committed. The *England* court held that the admissibility of extraneous offenses, even in the guise of "context" evidence, is governed by

---

1. Tex R. Evid. 404(b) reads:

 **(b) Other Crimes, Wrongs or Acts.** Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Rule 404(b) and that evidence of other crimes, wrongs, or acts is objectionable under Rule 404(b) when proffered only as contextual "background" evidence. *See England,* 887 S.W.2d at 914–15. Further, it held that even so-called "same transaction contextual" evidence is admissible under the rule only when it is necessary to the jury's understanding of the offense on trial, i.e., when it would make little or no sense without also bringing in the same transaction evidence. *England,* 887 S.W.2d at 915. Third, Crivello argues this testimony should not have been admitted because the State did not give him notice of its intent to introduce this evidence in its case in chief. Fourth, he argues that this evidence should have been excluded because the trial court failed to conduct the balancing test of Tex.R. Evid. 403 as mandated by *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim.App.1990).

■ As to the first two arguments, the record reveals that Crivello waived any objection to the admission of this evidence. He did object when Godwin referred to a fight in a bar, and the court sustained this objection. However, he failed to object when the same officer later testified that Crivello admitted he had been in a fight with his girlfriend at the Doc Mama's bar. The general rule is that error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection. *Rogers v. State,* 853 S.W.2d 29, 35 (Tex.Crim.App.1993).

■ As for Crivello's third argument, he also waived it by failing to get a ruling on this part of his motion in limine, which requested advance notice of extraneous offenses the State intended to use at trial. Crivello never brought this topic to the attention of the trial court, and the court never ruled on it. Therefore, the notice requirements of Rule 404(b) were not triggered. *See Mitchell v. State,* 982 S.W.2d 425 (Tex.Crim.App.1998).

■ As to the fourth argument, although the *Montgomery* case does mandate that the trial court conduct a Rule 403 balancing test if requested, the court does not have to conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test. *Howland v. State,* 966 S.W.2d 98, 103 (Tex. App.-Houston [1st Dist.] 1998), *aff'd,* 990 S.W.2d 274 (Tex.Crim.App.1999); *see Williams v. State,* 958 S.W.2d 186, 195–96 (Tex.Crim.App.1997). A judge is presumed to have engaged in the required balancing test once Rule 403 is invoked. *Williams,* 958 S.W.2d at 195–96.

Additionally, Crivello makes several arguments as to why the trial court erred in admitting this evidence, even assuming it qualifies as same transactional evidence. First, he argues that the trial court never made the preliminary determination that a jury could have found beyond a reasonable doubt that the accused committed the extraneous offense as required by Tex.R. Evid. 104(b)[2] and *Harrell v. State,* 884 S.W.2d 154, 160 (Tex.Crim.App.1994). Second, he argues that the trial court erred in not making a determination of relevancy as required by Tex.R. Evid. 401, and it did not engage in the Rule 403 balancing test as required by *Rogers,* 853 S.W.2d 29. Finally, he argues that this evidence should not have been admitted because it did not meet the requirements of Rule 404(b) as construed in the *Rogers* case in that it was not necessary to the jury's understanding of the instant offense.

■ As to his first argument, the record of the hearing on the admissibility of

2. Tex.R. Evid. 104(b) reads:
 **(b) Relevancy Conditioned on Fact.** When the relevancy of evidence depends upon the fulfillment of a condition of fact, the court shall admit it upon, or subject, to the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

this evidence does not show that Crivello ever objected to the court's perceived failure to make a Rule 104(b) preliminary determination. The court was required to make an initial determination as to the relevancy of the evidence, dependent upon the fulfillment of a condition of fact—in this case, whether Crivello committed the extraneous offense in question. *See Harrell*, 884 S.W.2d at 160. In deciding whether to admit extraneous offense evidence at the guilt/innocence phase of trial, the trial court must, under Rule 104(b), make an initial determination at the proffer of the evidence that a jury could reasonably find beyond a reasonable doubt that the defendant committed the extraneous offense. *Id.* Here, however, the record of the hearing on the admissibility of this evidence contains the testimony of two different police officers who each testified that the woman with whom they had contact at the apartment complex was hysterical and had visible injuries substantiating her claim that she had been assaulted. Also, Godwin testified that Crivello told him that he had been involved in an argument with his girlfriend. Relevancy determinations are reviewed under a clear abuse of discretion standard. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997). A trial court's ruling will be upheld if it is within the zone of reasonable disagreement. *See id.* Because we find the trial court's determination to be within this zone, this argument is unpersuasive.

As for Crivello's relevancy argument, if the trial court determines that the defendant committed the extraneous offense, the evidence is deemed relevant and admissible, provided it is not too prejudicial, as determined under Tex.R. Evid. 403, and is offered for a proper purpose. *Harrell*, 884 S.W.2d at 160. As previously stated, the trial court is presumed to have engaged in the Rule 403 balancing test once requested to do so, and the court does not have to conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test. *See Howland*, 966 S.W.2d at 103.

We also reject Crivello's argument that this evidence did not meet the requirements of Rule 404(b). Same transaction evidence, that is, evidence of other offenses connected with the primary offense, is admissible as an exception under Rule 404(b) where such evidence is necessary to the jury's understanding of the instant offense. *Rogers*, 853 S.W.2d at 33. "The reason for its admissibility 'is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose.'" *Id.* In the instant case, this same transaction evidence was necessary to the jury's understanding of why the police were at the apartment when Crivello passed through the parking lot and why chase was initially given. This chase and Crivello's erratic driving gave the pursuing officer reason to stop Crivello, i.e., violation of a traffic law, and also led the officer to suspect Crivello of driving while intoxicated. We hold that this evidence was properly admitted. Crivello's first point of error is overruled.

In his second point of error, Crivello contends the trial court erred in allowing the State to elicit from Bresik out-of-court statements made by the complainant, who was not called to testify. He claims that this violated his constitutional right to confrontation as guaranteed by U.S. Const. amend. VI and Tex. Const. art. 1, § 10. Specifically, he contests the admission of the following testimony:

Q. When you responded to the call, when you were talking to the person that called about the disturbance, did she tell you anything regarding intoxication, as to her state or the Defendant's state?

A. Yes. She stated they were at the bar and they had been drinking.

Crivello objected that Bresik's answer constituted hearsay. The court sustained his objection. Crivello then objected on the ground that it violated his rights under the confrontation clause of the United States and Texas Constitutions, but the court overruled this objection.

■ Crivello failed to preserve error for appeal by not pursuing his hearsay objection to an adverse ruling. The proper procedure for obtaining an adverse ruling is to first object, then ask for a curative instruction, and finally move for a mistrial. *Brooks v. State*, 642 S.W.2d 791, 798 (Tex.Crim.App. [Panel Op.] 1982). By obtaining the relief he requested and not seeking an adverse ruling, Crivello has waived his confrontation clause argument. Crivello's hearsay objection to the statement was sustained. He cannot now complain that this hearsay statement violated his confrontation clause rights, because any effect the statement had upon the jury was due to his own failure to request an instruction that the jury disregard it and to then ask for a mistrial.

■ Even if Crivello did not fail to preserve error, we find that the statement made by the complainant to Bresik falls within a firmly rooted exception to the hearsay rule and, therefore, its admission does not violate Crivello's constitutional right to confrontation. Crivello cites *Idaho v. Wright*, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), for the proposition that the constitutional right of confrontation controls over exceptions to the hearsay rule except where the exception is firmly rooted, the witness is unavailable, and there is sufficient evidence of the trustworthiness of the statement. He argues that the State did not offer this testi-mony as an exception to the hearsay rule, but if it had, it was not admissible under any firmly rooted exception to that rule. However, the State made it clear at the hearing on Crivello's motion in limine and motion to suppress that this testimony was offered under the excited utterance exception to the hearsay rule.[3]

The United States Supreme Court recently addressed this tension between the admission of hearsay statements, where the State relies upon an exception to the hearsay rule, and a defendant's Sixth Amendment right to confrontation. In *Lilly v. Virginia*, 527 U.S. 116, 119 S.Ct. 1887, 144 L.Ed.2d 117 (1999), the Court reaffirmed the general framework set forth in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), that the veracity of hearsay statements is sufficiently dependable to allow the untested admission of such statements against an accused when (1) "the evidence falls within a firmly rooted hearsay exception," or (2) it contains "particularized guarantees of trustworthiness" such that adversarial testing would be expected to add little, if anything, to the statements' reliability. *Lilly*, 527 U.S. at ——, 119 S.Ct. at 1894. The Court noted:

We have allowed the admission of statements falling within a firmly rooted hearsay exception since the Court's recognition in *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), that the Framers of the Sixth Amendment "obviously intended to ... respec[t]" certain unquestionable rules of evidence in drafting the Confrontation Clause. ... Justice Brown, writing for the Court in that case, did not question the wisdom of excluding deposition testimony, ex parte affidavits and their

---

**3.** Tex.R. Evid. 803 reads in relevant part:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

. . . .

**(2) Excited Utterance.** A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

equivalents. But he reasoned that an unduly strict and "technical" reading of the Clause would have the effect of excluding other hearsay evidence, such as dying declarations, whose admissibility neither the Framers nor anyone else 100 years later "would have [had] the hardihood ... to question." Ibid.

We now describe a hearsay exception as "firmly rooted" if, in light of "longstanding judicial and legislative experience," ... it "rest[s][on] such [a] solid foundatio[n] that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.'" ... This standard is designed to allow the introduction of statements falling within a category of hearsay whose conditions have proven over time "to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath" and cross-examination at trial.... In White, for instance, we held that the hearsay exception for *spontaneous declarations* is firmly rooted because it "is at least two centuries old," currently "widely accepted among the States," and carries "substantial guarantees of ... trustworthiness ... [that] cannot be recaptured even by later in-court testimony."

*Lilly,* 527 U.S. at ——–——, 119 S.Ct. at 1894–95 (emphasis added). It appears that an excited utterance is the type of spontaneous declaration that the Supreme Court of the United States recognizes to be a firmly rooted exception to the hearsay rule.

The Texas Court of Criminal Appeals has also addressed this area of the law. In *Penry,* it examined the relationship between the admission of hearsay statements where the State specifically relies upon the excited utterance exception and a defendant's Sixth Amendment right to confrontation. There the Court stated:

The confrontation clause requires a showing that a hearsay declarant is un-

available and that the statement bears adequate "indicia of reliability." *Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). Reliability may be inferred where the evidence falls within a firmly rooted hearsay exception. *Id.*

As we held in *Penry v. State,* the deceased was obviously unavailable and the "excited utterance" exception to the hearsay rule is "old and firmly rooted." 691 S.W.2d at 647. The trial court did not err in admitting the statements.

*Penry v. State,* 903 S.W.2d 715, 751 (Tex. Crim.App.1995); *see also Penry v. State,* 691 S.W.2d 636, 647 (Tex.Crim.App.1985). Because we find that the excited utterance exception is a firmly rooted exception to the hearsay rule for purposes of meeting the requirements of *Ohio v. Roberts,* the trial court did not err in overruling Crivello's confrontation clause challenge.

■■■ Another basis for concluding that admission of this statement by the complainant to Bresik was not a violation of Crivello's constitutional right to confrontation is that it was not a hearsay statement. The statement shows why the police were at the apartment when Crivello passed through the parking lot and why chase was initially given. As such, it was not offered for the truth of the matter asserted, but to show why the police were where they were and why they did what they did.

Frequently, testimony will have an impermissible hearsay aspect along with a permissible nonhearsay aspect. Almost always it will be relevant for a testifying officer to relate how she happened upon the scene of a crime or accident; thus, it is permissible for her to testify that she was acting in response to "information received." "[A]n arresting officer should not be put in the false position of seeming just to have happened upon the scene, he should be allowed some explanation of his presence

and conduct." *McCormick on Evidence,* Section 249, p. 735 (Cleary Rev., 3rd Ed.1984).

*Schaffer v. State,* 777 S.W.2d 111, 114 (Tex. Crim.App.1989); *see also Jones v. State,* 843 S.W.2d 487, 499 (Tex.Crim.App.1992) (holding that, because a statement was not offered to prove the truth of the matter asserted, but to show why the officer got an arrest warrant for and arrested appellant, it was not objectionable as hearsay).

 Further, even if the trial court did err in overruling Crivello's confrontation clause objection, this point of error is waived since Godwin testified earlier without objection that Crivello told him that he (Crivello) had been drinking. As stated previously, the general rule is that error regarding improperly admitted evidence is waived if that same evidence is brought in later by the defendant or by the State without objection. *See Rogers,* 853 S.W.2d at 35. We overrule this point of error.

In his third point of error, Crivello contends that the trial court erred by admitting into evidence a videotaped recording made of him at the jail during which he was asked to perform sobriety tests. He contends that the State failed to establish the proper predicate for admission of this evidence.

 First, Crivello voiced only a general objection to this evidence, without specifying the grounds for the ruling he desired. To preserve an issue for appellate review, the defendant must make a timely request, objection, or motion stating specific grounds for the ruling he desires the trial judge to make. TEX.R.APP. P. 33.1(a)(1); *King v. State,* 953 S.W.2d 266, 268 (Tex.Crim.App.1997); *Tinlin v. State,* 983 S.W.2d 65, 69 (Tex.App.-Fort Worth 1998, pet. ref'd).

 Further, Crivello contends on appeal that the admission of this videotaped recording was in violation of TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3.[4] However, he fails to state how he contends the provisions of this statute were not followed and cites no other authority for this position. Any error based on an alleged violation of this statute has been waived. *See Ramirez v. State,* 973 S.W.2d 388, 393 (Tex. App.-El Paso 1998, no pet.) (failure to cite authority in support of a point of error on appeal waives the complaint).

Crivello's argument on appeal regarding the admissibility of the videotape is tied solely to the alleged failure of the State to follow the predicate dictates of *Edwards v. State,* 551 S.W.2d 731 (Tex.Crim.App. 1977). He points out that in *Edwards,* the requirements for introducing a recording are as follows: (1) that the recording device was capable of taking testimony; (2) that the operator of the device was competent; (3) that the recording is both authentic and correct; (4) that no changes, additions, or deletions have been made to the recording; (5) that the manner of the preservation of the recording has been shown; (6) that all speakers on the recording are identified; and (7) that the testimony depicted in the recording was voluntarily made without any kind of inducement.

The requirements of *Edwards,* however, were superseded by the Texas Rules of Criminal Evidence. *Leos v. State,* 883 S.W.2d 209, 211 (Tex.Crim.App.1994); *Stapleton v. State,* 868 S.W.2d 781, 786–87 (Tex.Crim.App.1993). Recently, in *Angleton v. State,* 971 S.W.2d 65, 69 (Tex.Crim. App.1998), the Texas Court of Criminal Appeals stated:

> While the *Edwards* test and other pre-rules caselaw may often yield the same results and may sometimes employ simi-

---

4. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon Supp.1999) deals with when oral statements of an accused, made as a result of custodial interrogation, may be used against the accused in a criminal proceeding.

lar reasoning to that required under Rule 901 [Texas Rules of Criminal Evidence], that is not invariably the case. And, we find that attempting to cling to the *Edwards* test after the enactment of Rule 901 will result in unwarranted confusion.... Rule 901 is straightforward, containing clear language and understandable illustrations.

Effective March 1, 1998, the Texas Rules of Criminal Evidence were merged with the Texas Rules of Civil Evidence to form the Texas Rules of Evidence. The trial in the instant case began April 20, 1998, and, therefore, is governed by the Texas Rules of Evidence. Rule 901 of the Texas Rules of Evidence reads in pertinent part as follows:

**Rule 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION**

(a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of Witness with Knowledge.* Testimony that a matter is what it is claimed to be.

. . . .

(4) *Distinctive Characteristics and the Like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

(5) *Voice Identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker.

▮ Under these provisions, the trial court did not abuse its discretion by admitting this videotape into evidence. First, Godwin testified that the videotape is what it is claimed to be; it was made on the night of the arrest; it was reviewed by him on the day of trial; and nothing on the videotape had been changed or altered. Second, the videotape possesses distinctive characteristics in that the date and time of its making are superimposed on the image as viewed and the jury could determine that it depicts the same person as the defendant. Further, all of this is corroborated by Godwin's testimony. Finally, Godwin testified that the conversation on the videotape took place between himself and Crivello, and the jury could determine whether one of the voices on the videotape was indeed Godwin's by comparing it to Godwin's voice in his courtroom testimony. This point of error is overruled.

In his fourth point of error, Crivello contends the trial court erred by permitting the State to elicit from the arresting officer inculpatory statements made by the defendant in violation of his constitutional rights and TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3. Specifically, he argues that the statements he made to Godwin after Godwin stopped him and was walking him to a level area, were the product of custodial interrogation and were made without having first been given warnings in accordance with *Miranda*[5] and TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3. Godwin testified as follows:

Q. Okay. Once you had the defendant pulled over, did you ask him to exit the vehicle?

A. Yes, sir, I did.

Q. What happened when you asked him to do that?

5. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

A. He was very slow in his movements. When I asked him to step from the vehicle, he opened the door and he had to physically use the door for support to get out of the vehicle, his balance was off and he had to steady himself with the door. Once he got his grounding, he closed the door.

Q. What happened next?

A. I asked him to step over towards — we were kind of — the areas where he stopped kind of slopes at a downward angle, so I asked him to walk towards an area a little bit more level, just for his own safety as well as mine.

Q. Were any statements made during the time you asked him to step to the level area?

A. I asked him where he had been and where he was coming from.

Q. What was his response?

A. He said he had been at Doc Mama's Bar.

Q. Did you ask him anything else?

A. I asked if he had been drinking.

Q. What was his response?

A. He said he had had several beers.

Q. Did he say anything else?

A. I asked if he was involved in any kind of altercation or argument.

Q. What was his response?

A. He said he had been involved in an argument with his girlfriend.

Q. What did you do at that point?

A. At this point, I took him to the level part of the parking lot and began to demonstrate the field sobriety tests to him.

 Crivello filed a motion to suppress the statements made to Godwin, but the trial court denied his motion. The State argues that by not objecting to the same testimony challenged in the motion to suppress when it was later elicited from Godwin, Crivello has waived error. This is incorrect. When a pretrial motion to suppress is denied, the accused need not subsequently object to the admission of the same evidence at trial in order to preserve error. *Livingston v. State*, 739 S.W.2d 311, 334 (Tex.Crim.App.1987); *Rangel v. State*, 972 S.W.2d 827, 836 n. 5 (Tex.App.-Corpus Christi 1998, pet. ref'd). A ruling on a motion to suppress lies within the sound discretion of the trial court. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim.App.1996). In deciding the motion, the trial court serves as the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id.*

 We must first determine whether these statements made by Crivello to Godwin were the product of custodial interrogation. If not, then no warnings needed to be given and the trial court did not err in overruling Crivello's motion to suppress these statements. *Miranda* and Article 38.22 of the Texas Code of Criminal Procedure apply only to statements made as a result of custodial interrogation. *Rodriguez v. State*, 939 S.W.2d 211, 215 (Tex. App.-Austin 1997, no pet.). They are not applicable to statements resulting from noncustodial interrogation. *Id.*; *Parra v. State*, 743 S.W.2d 281, 285 (Tex.App.-San Antonio 1987, pet. ref'd) (citing *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *Stone v. State*, 583 S.W.2d 410 (Tex.Crim.App. [Panel Op.] 1979)). Thus, if appellant's statement did not stem from custodial interrogation, neither *Miranda* nor Article 38.22 requires its suppression. *Rodriguez*, 939 S.W.2d at 215; *Morris v. State*, 897 S.W.2d 528, 531 (Tex.App.-El Paso 1995, no pet.); *see Galloway v. State*, 778 S.W.2d 110, 112 (Tex. App.-Houston [14th Dist.] 1989, no pet.).

 Custodial interrogation is "questioning initiated by law enforcement offi-

cers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Berkemer v. McCarty,* 468 U.S. 420, 428, 104 S.Ct. 3138, 82 L.Ed.2d 317, 327 (1984). In *Hutto v. State,* 977 S.W.2d 855, 856 (Tex.App.-Houston [14th Dist.] 1998, no pet.), the Houston Court of Appeals considered the question of whether appellant was in custody at the time he told officers he was driving and had consumed four beers. The court there looked to *State v. Stevenson,* which considered a similar issue and stated that, "The United States Supreme Court has held that a traffic stop does not constitute 'custody' for *Miranda* purposes." *State v. Stevenson,* 958 S.W.2d 824, 828 (Tex.Crim.App.1997). Although Stevenson argued that probable cause existed to arrest him after the officer investigating his one-car accident discovered evidence inconsistent with his untruthful statement to the officer that his wife had been driving the car, the *Stevenson* court found that the facts did not justify a finding that the initial noncustodial encounter between the officer and Stevenson escalated into a custodial interrogation. "At most, the accident investigation may have escalated from a consensual encounter to an investigative detention. But, mere focus upon the defendant did not convert the investigation into an arrest." *Id.* at 829. Based on the holding of the *Stevenson* case, the *Hutto* court stated the following:

> In this case, as in *Stevenson,* there is no evidence in the record of appellant's subjective perception that he did not feel free to leave. There is no evidence in this record that [Officer] Miner manifested to appellant any intent to arrest until after the field sobriety testing was complete, and Miner informed appellant he was under arrest for DWI. We find that appellant's investigation for field sobriety testing and questioning did not convert the roadside stop into an arrest. These acts are not sufficient to establish custody under *Miranda.*

*Hutto,* 977 S.W.2d at 858.

■ Likewise, in the present case, there is no evidence of Crivello's subjective perception that he did not feel free to leave. Further, there is no evidence that Godwin informed Crivello that he was under arrest before Crivello made the contested statements. The record reveals that Crivello was pulled over by the police because Godwin saw signs of intoxication and to investigate the report of domestic violence. No facts suggest that this roadside investigatory stop changed character so as to amount to custody under *Miranda.* We overrule this point of error.

In his final point of error, Crivello contends the trial court erred in failing to suppress all evidence obtained after the traffic stop because the stop was not authorized by law. Specifically, he argues that at the suppression hearing he met his initial burden of producing evidence to rebut the presumption of proper police conduct by establishing that the stop was effected without a warrant. He argues that once the burden shifted back to the State to show the reasonableness of the stop, it failed to proffer sufficient evidence to support a reasonable suspicion on its part for the stop.

■ Crivello correctly states that the defendant bears the initial burden on a motion to suppress. *Russell v. State,* 717 S.W.2d 7, 9 (Tex.Crim.App.1986); *Ashcraft v. State,* 934 S.W.2d 727, 735 (Tex.App.-Corpus Christi 1996, pet. ref'd). When the defendant establishes that a warrantless arrest occurred, the burden shifts to the State to show that a warrant existed or that the warrantless arrest was justified by probable cause. *Russell,* 717 S.W.2d at 9–10. At a suppression hearing the trial court is the sole trier of fact and judge of the credibility of the witnesses, including the weight to be given their testimony. *Romero v. State,* 800 S.W.2d 539, 543 (Tex. Crim.App.1990); *Laca v. State,* 893 S.W.2d 171, 177 (Tex.App.-El Paso 1995, pet. ref'd). We reverse a trial court's ruling on a suppression hearing only if the trial court clearly abused its discretion, *Cantu v. State,* 817 S.W.2d 74, 77 (Tex.Crim.App. 1991), and we view the evidence and all reasonable inferences in the light most

favorable to the trial court's ruling. *Villarreal*, 935 S.W.2d at 138; *see Romero*, 800 S.W.2d at 543.

Here, Crivello does not contest whether Godwin had ultimate probable cause to arrest him. Rather, he asserts the illegality of the arrest sooner in the chain of events by arguing that the evidence adduced at the hearing was insufficient to support that Godwin had initial reasonable suspicion to pursue him. An officer must have reasonable suspicion to stop a vehicle for investigation. *Francis v. State*, 922 S.W.2d 176, 178 (Tex.Crim.App. 1996). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific articulable facts which lead him to conclude that the person is, has been, or soon will be engaged in criminal activity. *Woods v. State*, 956 S.W.2d 33, 38 (Tex.Crim.App.1997).

In the instant case, the testimony at the suppression hearing showed that Godwin initially pursued Crivello because he "sped off" through the apartment complex parking lot and also to investigate the allegations of domestic violence. While in pursuit, Godwin observed several traffic violations. A peace officer may arrest without a warrant a person who is observed speeding. Consequently, Godwin had more than reasonable suspicion to stop Crivello; he actually had probable cause. *See* Tex. Transp. Code Ann. §§ 543.001, 545.351, 545.352 (Vernon 1999). Also, as he pursued Crivello, Godwin developed articulable facts which led him to conclude that Crivello was driving while intoxicated. Godwin testified as follows:

> And he [Crivello] sped off through the complex, through the parking lot. I ran to my squad car and pursued him in my vehicle. I witnessed him turn out of the complex onto Chaha Road and begin to go northbound. He was driving erratically, speeding and straddling the center divider between the northbound and southbound lanes. As soon as I exited the complex onto Chaha Road and I saw how he was driving, I tried to initiate a traffic stop.

> ... Because of the indicators that I got immediately when I contacted him, that he appeared to be intoxicated or under the influence, it went at that point to an investigation for driving under the influence.

The undisputed facts justified Godwin's belief that Crivello was speeding, as well as his reasonable suspicion that Crivello was driving while intoxicated. Further, as they were walking to a level spot on a nearby parking lot following the stop, Crivello admitted to Godwin that he had been drinking. When Crivello failed the field sobriety tests, the officer had probable cause to arrest him for D.W.I. and take him for further testing and videotaping. *See Highwarden v. State*, 846 S.W.2d 479 (Tex.App.-Houston [14th Dist.] 1993), *pet. dism'd, improvidently granted*, 871 S.W.2d 726 (Tex.Crim.App.1994). The trial court did not abuse its discretion in overruling Crivello's motion to suppress this evidence. We overrule this point of error.

The judgment is affirmed.