# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============
## NO. 03-99-00522-CR
===============

**Carlos Adalberto Soto, Appellant**

**v.**

**The State of Texas, Appellee**

========================================================================
### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. 0984849, HONORABLE JON N. WISSER, JUDGE PRESIDING
========================================================================

Appellant Carlos Adalberto Soto was convicted by a jury of the offense of attempted capital murder of Heather Hesskew and Yvette Twidwell. *See* Tex. Penal Code Ann. §§ 15.01, 19.03(a)(7) (West 1994). The jury also made an affirmative finding that appellant used a deadly weapon during the commission of the offense as alleged in the indictment. The trial court assessed punishment at thirty years' imprisonment.

## Points of Error

Appellant advances twelve points of error, mostly complaining of evidentiary rulings by the trial court. In the first two points of error, appellant complains of the admission into evidence of pillowcases and a photograph of guns, contending that this evidence was the product of an illegal search and seizure. In the third point, appellant urges that the trial court erred in excluding evidence of the bias and interest of one of the complainants. In point of error

four, appellant argues that the trial court erred in excluding proper evidence under Rule 404(b) of the Texas Rules of Evidence concerning witness Eric Chaney. *See* Tex. R. Evid. 404(b). In points of error five through nine, appellant contends that extraneous acts were admitted into evidence contrary to the procedures required by Rule 404(b). In points ten and eleven, appellant complains that the trial court failed to conduct a proper balancing test and that evidence was admitted in violation of Rule 403. Tex. R. Evid. 403. In the last point of error, appellant contends that the trial court erred in overruling a mistrial motion based on improper jury argument by the prosecutor. We will affirm.

### Background

There is no challenge to the sufficiency of evidence. A brief recitation of the voluminous facts will place the points of error in proper perspective. It is clear from the record that appellant shot sixteen-year-old Yvette Twidwell and twenty-three-year-old Heather Hesskew with a rifle in an apartment in Austin on the night of August 25, 1998. Both underwent extensive surgery to save their lives.

Kika Watson, driving home from work on the afternoon of August 25, 1998, picked up appellant and his co-defendant, Arturo Malagon, who were walking. They were all friends. Appellant and Malagon had been drinking beer. Later, the threesome drove to Eric Chaney's apartment in the Pierre Marquis Apartment complex. Watson was a friend of Chaney's. Appellant and Malagon did not know Chaney. Watson's purpose was to get Chaney's older girlfriend (Hesskew) to buy some beer for them as the threesome were all under age. Hesskew told them that Chaney, who was at work, had her identification card. She invited

2

the threesome to return about 6:30 p.m. to celebrate Chaney's birthday. After getting someone else to buy beer for them, Watson, appellant, and Malagon returned to the Chaney apartment.

Upon their return, they found Chaney and Hesskew arguing and fighting.[1] When the argument ended, the men went out on the balcony of the upstairs apartment 213. Heather Hesskew then locked the door and later yelled that she was going to kill herself. The men forced the door open and found Hesskew with a knife, that she had used to cut herself on the stomach. Soon Cheney and Hesskew "made up," and the birthday party continued. Later, Rob DeLuna and his girlfriend, Susan, arrived and they were joined by Wesley Welch, his girlfriend, Yvette Twidwell, and Wesley's brother, Steve Welch. The Welches and Twidwell lived in an apartment downstairs. Twidwell did not remain at the party long. She returned to her apartment.

Watson, appellant, and Malagon each had six beers or more to drink when DeLuna's girlfriend, Susan, passed by appellant in the small apartment. Appellant told her to get him a beer and she told him to get it himself. As she walked past, appellant "flipped her off" with an obscene gesture. DeLuna confronted appellant and an argument ensued. Chaney intervened. Shortly thereafter, DeLuna and Susan left the apartment. Chaney, who knew Watson but not appellant or Malagon, confronted appellant about his conduct with Chaney's guests. An argument erupted, but Watson intervened. Later, appellant became sick and went outside where he threw up. When Malagon left to go outside, Chaney asked if Malagon was going to "check on his girl [appellant]?" Neither appellant nor Malagon returned to the party.

---

[1] The argument was apparently over the fact that Hesskew had not washed Chaney's clothes that day and he was without clean clothes for his birthday party.

3

When Watson decided to leave the party, no one wanted him to drive as he was drunk. Watson insisted and went to the parking lot and drove away. He was followed by the Welch brothers and Chaney in Wesley Welch's car. Hesskew and Twidwell, who had appeared on the parking lot, could not get in the small car so they went to apartment 213 where the party had been in progress.

Chaney testified that he and the Welch brothers found Watson's automobile parked in his driveway at his home and assumed that he was safe. They briefly stopped at a McDonald's restaurant before returning to the apartment complex. In the parking lot they encountered two brothers, one of whom had been a security guard at the apartment complex. While they were talking, Chaney heard shots.

Heather Hesskew heard a knock at her apartment door. When she opened it, she was shot in the chest. A second shot hit Twidwell in the shoulder. Hesskew identified appellant as the man who shot her. She told Chaney, "They came back." Twidwell was heard to say: "I know who shot me." Both women were taken to the hospital and underwent surgery. Officers found 7.62 x 39 caliber shells at the scene.

Co-defendant Malagon testified for the State. He related that when he and appellant left the party, they went to appellant's nearby home. Malagon stated that appellant came out of his home with a rifle and an "off-white or beige cloth or soft-sided gun bag." They returned to the Chaney-Hesskew apartment. Malagon knocked on the door. When the door opened, appellant fired two shots. Malagon reported that he and appellant then ran, but in different directions. Malagon talked to appellant the next day via the telephone.

**The Pillowcases**

4

In his first point of error, appellant complains that the trial court erred in admitting evidence that was seized during the execution of a search warrant "when the information in the search warrant affidavit was stale in violation of the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution."

The complained-of evidence appears to be two pillowcases (State's exhibits nos. 68 and 69). As the State notes, appellant does not point out where he objected to the admission of the pillowcases on the grounds now urged on appeal or where he obtained an adverse ruling so as to preserve error. *See* Tex. R. App. P. 33.1(a). Appellant does give a record citation to the location of his objection, but a review of the record there reveals that the pillowcases were admitted without objection or "no further objections."

The pillowcases were introduced during the cross-examination of appellant's mother. This occurred late in the guilt/innocence stage of the trial after earlier legal discussions of search and seizure issues. At the time in question, no evidence from the search had been introduced into the record. Guadalupe Soto testified that her two sons, appellant and Gilbert Soto, Jr., lived with her at her house. She was still married but was not living with her husband. She testified that appellant came home shortly after 10:00 p.m. on the night in question. Appellant was drunk and threw up in the bathroom. Appellant's mother related that she locked the door and appellant did not leave again that night. On cross-examination, the following occurred:

Q: (By Ms. Casner) Ms. Soto, I'm going to show you what's been marked as State's Exhibit 68 and State's Exhibit 69. Do you recognize these?

A: Yes, Ma'am.

Q: Okay. Do you know where they came from?

A: I had them on top of two rifles.

Q: Okay. Inside your house?

A: Yes, Ma'am.

Q: Do you remember if it was in your bedroom or in a closet somewhere where they were located?

A: In the living room closet.

Q: Okay, in a closet? And these were draped over two rifles?

A: Yes. Ma'am.

Q: Okay. And just so the jury knows, these were taken by the police officers at [sic] a search warrant that was executed on your house?

A: Yes, Ma'am.

Q: Okay.

MS. CASNER: I'll offer State's Exhibits 68 and 69 into evidence.

MR. KIRK [Defense Counsel]: No further objections, Your Honor.

THE COURT: Okay. I think the Court has ruled on the objections.

6

State's exhibits nos. 68 and 69 were then admitted into evidence.[2] On redirect examination, Guadalupe Soto stated that the rifles, which she voluntarily mentioned, belonged to her husband.[3]

Normally, a specific objection is required to be made each time an offer of inadmissible evidence is made in order to preserve any error for review. *Purtell v. State*, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988). Appellant does not point out how error was preserved. However, when a trial court overrules a pretrial motion to suppress evidence, error is preserved as to the subject matter of the motion presented to the trial court, without the necessity of a further trial objection. *Livingston v. State*, 739 S.W.2d 311, 334 (Tex. Crim. App. 1987); *Gearing v. State*, 685 S.W.2d 326, 329 (Tex. Crim. App. 1985); *Kreyssig v. State*, 935 S.W.2d 886, 888 (Tex. App.—Texarkana 1996, pet. ref'd); *Wade v. State*, 814 S.W.2d 763, 765 (Tex. App.—Waco 1991, no pet.).[4]

Appellant filed a motion to suppress evidence seized in the execution of a search warrant. At the suppression hearings, appellant claimed that the affidavit underlying the search warrant lacked probable cause in that the information contained therein was stale. *See Sherlock v. State*, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982). At one of the suppression hearings, the affidavit, the search warrant, and the return thereon were introduced. The return on the search

---

[2] The court reporter's records reflect that these exhibits were pillowcases, not photographs of pillowcases. The color of these pillowcases is not reflected in the record.

[3] The caliber of these rifles was never established, but the record makes clear that none of the firearms found in the house during the search were connected with the shootings or were of the same caliber as the weapon or rifle used to inflict the wounds on the complainants.

[4] This proposition of law is an exception to the rule discussed in *Purtell v. State*, 761 S.W.2d 360, 368 (Tex. Crim. App. 1988).

7

warrant reflects the police officers seized "two off-white/cream colored, embroidered pillowcases; one photo of suspect's bedroom displaying a long barreled gun." At the third suppression hearing, the trial court eventually overruled the motion to suppress. It would thus appear that appellant preserved error as to the admission of the pillowcases and a photograph.

Having preserved error by the overruling of the suppression motion, it is incumbent on appellant to demonstrate that the trial court erred in its adverse ruling. *Guzman v. State*, 955 S.W.2d 85 (Tex. Crim. App. 1997), has set the standard of review on pretrial suppression rulings. We afford great deference to the trial court's determination of the historical facts under an abuse of discretion standard, but we decide *de novo* whether the trial court erred in applying the law to those facts. *Id*. at 87-88; *Hypolite v. State*, 985 S.W.2d 181, 185 (Tex. App.—San Antonio 1998, no pet.). Because we do not determine credibility, our *de novo* review of probable cause becomes a *de novo* review of a legal question. *Guzman*, 955 S.W.2d at 87-89; *State v. Derrow*, 981 S.W.2d 776, 778 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) (citing *Ornelas v. United States*, 517 U.S. 690, 697-99 (1996)).

The facts in the instant case regarding the search are clear-cut and undisputed. The question presented is whether the information in the search-warrant affidavit was stale, thereby preventing the affidavit and its four corners[5] from establishing probable cause. The affidavit by Austin Detective Gena Curtis reflected an ongoing investigation of the instant offense, which occurred on August 25, 1998; that the victims of the shootings had identified appellant as the shooter and Malagon as the one who forced the door open prior to the shootings;

---

[5] *See Jones v. State*, 833 S.W.2d 118, 123-24 (Tex. Crim. App. 1992); *Carroll v. State*, 911 S.W.2d 210, 218 (Tex. App.—Austin 1995, no pet.).

and that Malagon had given a confession to his involvement in the offense implicating appellant. The affidavit then recited Malagon's version of the offense. The affiant expressed the belief that an assault-type rifle used to commit the offense had been retrieved by appellant from 8203 Parkdale Cove in Austin. The affidavit sought the issuance of a search warrant to search for a 7.62 x 39 caliber rifle and ammunition and an "off-white or beige colored cloth or soft-sided gun bag." The affidavit was dated October 23, 1998. The warrant was issued on the same day.

Appellant acknowledges that Malagon's confession was given on October 22, 1998, but notes that this fact was not included in the affidavit, rendering stale the information contained therein. Appellant argues that the warrant was issued almost two months after the offense, and that the objects sought, if connected with the crime, would no longer be on the premises in question.

Probable cause to support the issuance of a search warrant exists where the facts given to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Bower v. State*, 769 S.W.2d 887, 902 (Tex. Crim. App. 1989). The facts set out in the affidavit must not have become stale when the magistrate issues the warrant. *Hafford v. State*, 989 S.W.2d 439, 440 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). The facts attested to must be so closely related to the time of the issuance of the warrant as to justify a finding of probable cause. *Heredia v. State*, 468 S.W.2d 833, 835 (Tex. Crim. App. 1971); *Wachter v. State*, 961 S.W.2d 598, 600 (Tex. App.—San Antonio 1997, pet. ref'd). It is enough, however, that a person of "reasonable caution" would believe that the objects sought were located at the place to be

9

searched.  *Wachter*, 961 S.W.2d at 600.  There is no established time limit on how old the information may be.  *Moore v. State*, 456 S.W.2d 114, 115 (Tex. Crim. App. 1970).

> Probable cause has an important time element.  Probable cause ceases to exist when it is no longer reasonable to presume that items once located in a specified place are still there.  Conversely, it may be reasonable under all the circumstances to presume that they are still where they once were, even after a considerable lapse of time.  Among the factors that may be considered when evaluating the reasonableness of a magistrate's inference that the suspect property is likely to be found where it was last seen are the length of time elapsed, the nature of the property, the nature of the criminal activity, and the likelihood that the contraband might be moved.  *Gonzales v. State,* 761 S.W.2d 809, 813 (Tex. App.—Austin 1989, pet. ref'd).

*State v. Bradley*, 966 S.W.2d 871, 875 (Tex. App.—Austin 1998, no pet.).

We must use the "totality of the circumstances" to determine if the affidavit reflects probable cause.  *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983); *Bower*, 769 S.W.2d at 902.  In making the determination, the affidavit must be interpreted in a common sense, realistic manner.  A hyper-technical analysis should be avoided.  *Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991).

The instant affidavit is no model.  We conclude, however, from the totality of the circumstances and our *de novo* review that the search-warrant affidavit adequately reflects probable cause.  The trial court did not err in overruling the motion to suppress.  We reject appellant's claim of a Fourth Amendment violation.[6]

---

[6] Appellant has not preserved error under the Texas Constitution.  A reviewing court will not decide the issue of whether an appellant's rights were violated under the state constitution where appellant in his brief has failed to distinguish his rights under the state constitution from those of the federal constitution.  *Dewberry v. State*, 4 S.W.3d 735, 748 (Tex. Crim. App. 1999).  Appellant has not offered specific arguments and authorities supporting his state constitutional

If our conclusion is wrong, the admission of the two pillowcases into evidence is, nevertheless, harmless error beyond a reasonable doubt. *See* Tex. R. App. P. 44.2(a). The two pillowcases in question were admitted without further objections during the cross-examination of appellant's mother. While she stated the two pillowcases were seized, none of the officers who executed the search warrant ever identified the pillowcases as being the ones at issue in the particular seizure in question. The pillowcases have significance only because of Malagon's testimony. He never identified the two pillowcases as resembling or being like the singular "off-white or beige cloth or soft-sided gun bag." Appellant's mother volunteered that she had the pillowcases "on top of two rifles." She explained that the rifles belonged to her husband. These rifles were not introduced into evidence, and there is no showing that they were connected in any way with the offense charged.

The evidence against appellant was overwhelming. Both victims at one time or another[7] identified appellant as the man who shot them. Co-defendant Malagon testified that appellant shot both women with a rifle while he was present. All the evidence showing appellant's guilt renders the admission of the two pillowcases insignificant. We find beyond a reasonable doubt that the error, if any, did not contribute to the conviction or punishment. Tex. R. App. P. 44.2(a).

In part B of the first point of error, appellant switches gears. In a multifarious vein he claims that, for the same reasons he urged earlier, the trial court erred in admitting

claim. *See Brooks v. State*, 990 S.W.2d 278, 288 (Tex. Crim. App. 1999).

[7] Twidwell did not make an in-court identification of appellant. She had, however, selected appellant from a photographic array, and said right after the shooting that she knew who shot her. Hesskew identified appellant at all times as the shooter.

11

State's exhibit no. 53 (a photograph of the two pillowcases) into evidence. Our examination reveals that State's exhibit no. 53, while authorized to be introduced, was never offered by the State before the jury. Appellant's first point of error is overruled.

**A Photograph of Guns**

In the second point of error, appellant asserts that the "trial court erred in admitting, over objection, evidence that was the fruit of an illegal seizure in violation of the Fourth Amendment to the United States Constitution, Article I, Section 9 of the Texas Constitution, and Article 38.23 of the Texas Code of Criminal Procedure."

In his brief, appellant tells us the evidence in question is State's exhibit no. 54. This exhibit is a photograph of a display of numerous guns found in the house where appellant lived. The guns were not seized, but a photograph of the guns was made at the time of the search. Appellant submits that the taking of the photograph of the guns was tantamount to a seizure.

Appellant readily acknowledges that his objection to State's exhibit no. 54 was sustained and the exhibit was not before the jury. Appellant, however, calls our attention to his mother's later volunteered testimony about two rifles, admitted without objection. Any earlier sustained objection to the photograph of numerous firearms and a knife (State's exhibit no. 54) did not, without further objection, preserve error as to the mother's limited testimony on cross-examination. The second point of error is overruled.

**Lack of Confrontation**

12

In the third point of error, appellant urges that the "trial court erred in refusing to allow appellant to question the complainant [Hesskew] concerning her bias or interest in this proceeding in violation of the Sixth Amendment to the United States Constitution."

Thus, appellant presents a federal constitutional question of lack of confrontation. Appellant fails to tell us where he made an objection on the basis he now urges on appeal. *See* Tex. R. App. P. 38.1(h). To preserve error for appellate review, the complaining party must make a timely specific objection and obtain an adverse ruling on the objection. *See* Tex. R. App. P. 33.1(a); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Moreover, the complaint on appeal must comport with the trial objection. *Broxton*, 909 S.W.2d at 918. An objection stating one theory may not be used to support a different legal theory on appeal. *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990).

Most constitutional claims are subject to waiver unless timely presented to the trial court. *Thornton v. State*, 994 S.W.2d 845, 854 n.5 (Tex. App.—Fort Worth 1999, pet. ref'd); *Hawkins v. State*, 964 S.W.2d 767, 769 (Tex. App.—Beaumont 1998, pet. ref'd) (including confrontation clause error). An accused must lodge a proper and timely objection at trial on the lack of confrontation, due process, or due course of law in order to preserve error. *Phelps v. State*, 999 S.W.2d 512, 518 (Tex. App.—Eastland 1999, no pet.) (citing *Holland v. State*, 802 S.W.2d 696, 699-700 (Tex. Crim. App. 1991); *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990)). Thus, appellant's failure to present any alleged confrontation clause error to the trial court results in a procedural default of that claim. *Jenkins v. State*, 912 S.W.2d 793, 815 (Tex. Crim. App. 1995).

13

Prior to Hesskew's cross-examination, appellant's counsel indicated that he wanted to inquire about her "one time lying on [Eric Chaney's] behalf and being arrested for it and trying to hide Eric." The trial court suggested that appellant's counsel was attempting to impeach with a specific incident of conduct, which was not permissible. *See* Tex. R. Evid. 608(b).[8] The trial court held that the testimony could not be used for impeachment purposes under Rule 608(b).[9] Appellant did not advance any other theory of impeachment supporting the admission of the testimony.

Nevertheless, appellant, in addition to the now rejected constitutional claim, advances for the first time the claim that the testimony was admissible under a different theory of impeachment. *See* Tex. R. Evid. 613(b). Rules 608(b) and 613(b) serve distinct and different purposes in the impeachment of witnesses.[10] Any trial objection based on Rule 608(b) does not preserve error for review under Rule 613(b). *Dixon v. State*, 2 S.W.3d 263, 273 (Tex. Crim. App.

---

[8] Rule 608(b) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be inquired into on cross-examination of the witness, or proved by extrinsic evidence.

Tex. R. Evid. 608(b).

[9] The testimony related to a specific act of the witness's conduct—hindering apprehension of Eric Chaney by being untruthful concerning his whereabouts. The misdemeanor offense resulted in a deferred adjudication disposition that was later discharged prior to the instant trial. There was no conviction to be used for impeachment. *See* Tex. R. Evid. 609.

[10] *See generally* 1 Steven Goode, Olin Guy Wellborn III, & M. Michael Sharlot, *Guide to the Texas Rules of Evidence: Civil and Criminal* § 613.6, at 651 (Texas Practice 1993).

1998) (op. on reh'g).  Appellant has not preserved any error for review under Rule 613(b).  The third point of error is overruled for all the reasons stated.

**Rule 404(b)**

In the fourth point of error, appellant claims that the "trial court erred in refusing to admit proper evidence pursuant to Tex. R. Evid. 404(b) concerning Eric Chaney."  We are told that "[a]ppellant was not permitted to introduce evidence that Eric was on parole for an assaultive offense."

Prior to Chaney's testimony, the prosecutor raised the question of whether appellant could inquire into the nature of an offense made the basis of a finding of delinquent conduct that resulted in Chaney's commitment to the Texas Youth Council.  The prosecutor objected that the evidence would be irrelevant, but if relevant, inadmissible under Rule 403.  *See* Tex. R. Evid. 403.  Appellant responded that the evidence was admissible under Rule 404(b). Tex. R. Evid. 404(b).  Acknowledging that Chaney was not a victim nor a defendant, appellant urged that the evidence was admissible to show Chaney's "intent" and the fact that Chaney was convicted of an assaultive offense would support "the defense [contention] that he might have been involved."  The trial court sustained the State's objection, but held that appellant could use other evidence about the juvenile commitment.

The jury heard evidence that Chaney was committed to the Texas Youth Council, was released on parole to a half-way house, absconded, and was an escapee at the time of the shooting.  It was also shown that he was later arrested and returned to the Texas Youth Council. At the time of the trial, Chaney was again on parole and living with his parents in Wyoming.

15

To support the admission of the nature of the juvenile offense, appellant relies upon *Tate v. State*, 981 S.W.2d 189 (Tex. Crim. App. 1998). This reliance is misplaced. *Tate* is distinguishable on the facts and the law. Moreover, Rule 609(d) provides:

> Evidence of juvenile adjudications is not admissible, except for proceedings conducted pursuant to Title III, Family Code, in which the witness is a party, under this rule unless required to be admitted by the Constitution of the United States or Texas.

Tex. R. Evid. 609(d). Appellant does not rely upon a constitutional basis for his claim.

A trial court has broad discretion in admitting or excluding evidence. Only when a trial court has abused its discretion should a reviewing court conclude that the ruling was erroneous. *Montgomery v. State*, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1990) (op. on reh'g). Before evidence is admissible, it must be relevant as defined by Rule 401. Tex. R. Evid. 401. Whether evidence of "other crimes, wrongs or acts" has relevance apart from character conformity, as required by Rule 404(b), is also a question for the trial court. *Moreno v. State*, 944 S.W.2d 685, 691-92 (Tex. App.—Houston [14th Dist.] 1997, *aff'd*, 22 S.W.3d 452 (Tex. Crim. App. 1999). The trial court did not abuse its discretion in excluding the evidence in question. *See also* Tex. R. Evid. 103(a).

If it could be argued there was error in the exclusion of the evidence of the underlying basis of Chaney's juvenile delinquency, it was non-constitutional error. *See* Tex. R. App. P. 44.2. Appellant's substantial rights were not affected given all the circumstances. The only evidence excluded was the fact that Chaney was charged in juvenile court with an assaultive offense. The fourth point of error is overruled.

16

## Claim Not Preserved

In point of error five, appellant urges that the trial court erred in admitting "evidence of extraneous bad acts of appellant when the State did not identify the purpose for which it was offered as required by Tex. R. Evid. 404(b)." In the sixth point of error, appellant claims that the "trial court erred in failing to require the State to identify the purpose for which it was offering the extraneous evidence." Although different record references are cited, appellant states that this latter contention is the same as the fifth point, although differently stated.

Rule 404(b)[11] does not expressly set forth the procedure described by appellant. He relies upon *Montgomery,* which states in pertinent part:

> When a party attempts to adduce evidence of "other crimes, wrongs or acts," in order to preserve error on appeal, the opponent of that evidence must object in a timely fashion. . . . Once that complaint is lodged, it is incumbent upon the proponent of the evidence to satisfy the trial court that the "other crime, wrong, or act" has relevance apart from its tendency "to prove character of a person in order to show that he acted in conformity therewith." Rule 404(b), supra. *The trial court should honor any request by the opponent of the evidence for articulation*

---

[11]   Rule 404(b) provides:

**Other Crimes, Wrongs or Acts**.  Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

Tex. R. Evid. 404(b).

17

*into the record of the purpose for which evidence is either offered by the proponent or ultimately admitted by the trial court.*

*Id.*, 810 S.W.2d at 387 (emphasis added); *see also Massey v. State*, 933 S.W.2d 582, 586 (Tex. App.—Houston [1st Dist.] 1996, no pet.).

Appellant, under point of error five, has failed to direct our attention to the record where his request was made and where the trial court failed to require the State to identify the purpose for which the evidence was being offered. The single citation to the record to support his contention under the fifth point does not reflect a Rule 404(b) objection or a request. We are only generally referred to "various bench conferences and hearings outside the jury's presence when Appellant's 404(b) objection was discussed." This does not comply with our briefing rules. *See* Tex. R. App. P. 38.1(h). The right to appellate review extends only to complaints made in accordance with our rules of appellate procedure. *Burks v. State*, 876 S.W.2d 877, 901 (Tex. Crim. App. 1994). Nothing is presented for review if appellant does not direct the appellate court to the specific portion of the record where the objection or request was made and an adverse ruling obtained. *Lape v. State*, 893 S.W.2d 949, 953 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (citing *Cook v. State,* 611 S.W.2d 83, 87 (Tex. Crim. App. 1981)).

Under the sixth point of error, appellant does make reference to a record page where a request was made. In the middle of a running colloquy, appellant's trial counsel did mention that the State had not identified the purpose for which the firearms were being offered and requested that the trial court ask the State to articulate the purpose "for the record." Appellant's argument, however, continued unabated. Other matters were raised and pursued. Appellant's counsel never mentioned the request again nor obtained an adverse ruling in order

18

to preserve error, if any. *See* Tex. R. App. P. 33.1(a). The fifth and sixth points of error are overruled.

## Non-Compliance with Briefing Rules

In the seventh point of error, appellant contends that the "trial court erred in failing to identify the fact of consequence for which it received the extraneous evidence." The appellate brief states:

> Appellant asserts the same principles of law discussed in points of error five and six, *supra*, require this Court to also find that the trial court erred in failing to identify the fact of consequence for which it received the extraneous offense. Appellant refers this Court to the analysis in those points of error.

This is the sum total of point of error seven. It is not adequately briefed and presents nothing for review. *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995); *Foster v. State*, 779 S.W.2d 845, 864 (Tex. Crim. App. 1989); *Turro v. State*, 950 S.W.2d 390, 401 (Tex. App.—Fort Worth 1997, pet. ref'd). Point of error seven is overruled.

## Lack of Relevancy Analysis

In the eighth point of error, appellant claims that the "trial court erred in failing to conduct a complete relevancy analysis upon 404(b) objection by the defense." Appellant does not claim that he made a relevancy objection, but contends that when a Rule 404(b) objection is made it is inclusive of "a Rule 402 objection." *See Rankin v. State*, 974 S.W.2d 707, 709 (Tex. Crim. App. 1996).

19

By a record page reference, appellant cites us to a pretrial hearing on the suppression motion where his counsel made mention of Rule 404(b) in his argument to the trial court. We, however, find no objection on the basis of Rule 404(b), nor was the rule the basis of the motion to suppress evidence. Moreover, if there was a pretrial Rule 404(b) objection to evidence of "pillowcases draped over firearms," appellant has not pointed it out, and we have not found, where appellant obtained an adverse ruling on the objection so as to preserve error. *See* Tex. R. App. P. 33.1(a)(2)(A). Further, appellant has not informed us what evidence was introduced pretrial over his objection, if any. The eighth point of error is overruled.

**Failure to Give Proper Notice**

In the ninth point of error, appellant urges that the "trial court erred in admitting, over appellant's objection, extraneous bad acts of appellant when the State failed to give proper notice under 404(b)." It is important to keep in mind the nature of the acts claimed to be extraneous and bad, the objection made, the trial court's ruling, and the evidence, if any, introduced over objection.

Appellant tells us in his brief that the objection was addressed to the proposed testimony of officers that, when they executed a search warrant at the house where appellant lived with his mother and brother, they found in a closet two pillowcases draped over firearms. Appellant claims that this proposed testimony concerned an extraneous bad act on his part and was not included in the State's written notices of intent to use extraneous bad act evidence.

Appellant directs our attention to an objection to the lack of notice of the proposed testimony made during the pretrial hearing on the suppression motion. No ruling was obtained.

20

The matter was raised again after the selection of the jury. Again, no ruling was obtained. During trial when Detective Curtis began to testify about the search, the jury was removed. After another hearing, the trial court ultimately overruled the Rule 404(b) notice objection stating:

> I think the Court's going to overrule the objection and let the officer testify to these and how they were found and where they were draped . . . the court's still struggling with the 404(b), but it's going to overrule the objection to that . . . the court finds the State's notice in that they [defense] have been given the photos and the State's testimony is sufficient even thought the court is aware that it wasn't listed.[12]

(Footnote added.)

Thereafter, however, the trial court sustained the objection to State's exhibit no. 54 (a photograph displaying the firearms and a knife found in the house) and to State's exhibit no. 55 (a photograph of a bedroom and a dog and a shotgun leaning against the wall or the furniture). The trial court overruled the objection to State's exhibit no. 53 (a photograph of two light-colored pillowcases on a flat surface). After the jury returned, State's exhibit no. 53 was never offered into evidence, and no officer testified before the jury that in a search two pillowcases were found draped over two firearms. Under the record we find no merit in appellant's "lack of notice" contention. We need not address the State's claim of a procedural default that appellant misdirected his original request for notice of extraneous matters under Rule 404(b) to the trial court and not to the State as required. *See Mitchell v. State*, 982 S.W.2d

---

[12] The record reflects that certain photographs of guns and the pillowcases had been given by the State to appellant a reasonable time before trial although these items were not listed in the State's notices of intent to introduce extraneous bad acts.

21

425, 426 n.1 (Tex. Crim. App. 1998). Further, we need not consider whether Rule 404(b) was inapplicable because the firearms and two pillowcases found in the search were not shown to be connected to appellant or the crime, and thus were not evidence of an extraneous offense or bad act as contemplated by the rule. *See Lockhart v. State*, 847 S.W.2d 568, 573 (Tex. Crim. App. 1992). The ninth point of error is overruled.[13]

## A Rule 403 Claim

In the tenth and eleventh points of error, appellant claims that the trial court erred in admitting evidence of appellant's bad acts when the probative value of such evidence was substantially outweighed by the danger of unfair prejudice, and in doing so, did not conduct a proper balancing test under Rule 403. *See* Tex. R. Evid. 403.

Strangely, the only evidence mentioned in appellant's brief is State's exhibit no. 54 (photograph of firearms found in the house searched). A defense trial objection to the exhibit was sustained. While the exhibit is in the record, it was never admitted into evidence before the jury. Moreover, appellant never points out in the record where his particular Rule 403 objection to the exhibit was made. Appellant relies upon a statement of the trial court in overruling an "objection based on the search warrant," that included the remarks "and doesn't find that it should be excluded under 403 for unfair prejudicial value." The trial court had earlier refused to admit State's exhibit no. 54 into evidence. It is not clear that the trial court's later remarks

---

[13] Appellant has not tied his point of error in any way to the cross-examination of appellant's mother and the admission of State's exhibits nos. 68 and 69 without further objections.

22

were addressed to State's exhibit no. 54. The trial court's remarks may have been gratuitous at the time they were made.

The trial court must conduct a Rule 403 balancing test, if requested. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex. Crim. App. 1997); *Howland v. State*, 966 S.W.2d 98, 103 (Tex. App.—Houston [1st Dist.] 1998), *aff'd.,* 990 S.W.2d 274 (Tex. Crim. App. 1999). It need not, however, conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test. *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd). If the trial court did in fact overrule a Rule 403 objection, the trial court necessarily conducted the balancing test by considering and overruling the objection. *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd). We find no merit in appellant's tenth and eleventh points of error. They are overruled.

## Jury Argument

Lastly, appellant claims that the trial court erred in overruling his motion for mistrial based on improper argument by the prosecutor outside the record.

At the guilt/innocence stage of the trial during the jury argument of the prosecutor, the record reflects:

[Prosecutor]: You also heard the testimony -- and I find it -- I find it interesting, and I hope you do too, that Mr. Turner finds Arturo Malagon's story silly. Because he encouraged Arturo Malagon not to testify.

MR. TURNER [Defense Counsel]: I object to that.

MS. CASNER [Prosecutor]: You heard the testimony of --.

THE COURT: What's -- what's --

MR. TURNER: I ask for an instruction on that.

THE COURT: What's the objection?

MR. TURNER: I object to her insinuating that I ever told a witness to lie, and I object to her going into facts outside the record. There's no evidence of that.

MS. CASNER: It's a reasonable inference, Your Honor.

THE COURT: Okay, the jurors are instructed that your verdict must be based solely on the evidence that you observed and heard in this courtroom together with any reasonable inference. I think we should sustain the objection.

MR. TURNER: Move for a mistrial.

THE COURT: That request will be denied.

MS. CASNER: You heard the testimony of Arturo Malagon. That he met with Mr. Turner last Friday, the Friday before trial started. And when asked if Mr. Turner ever explained to him that "Hey, if you don't testify, if you refuse to testify, the State may not have enough evidence against your buddy, Carlos Soto, to convict him." He made that statement to Arturo Malagon. You make the inference. You decide whether that encourages Arturo Malagon to get up on the stand and tell the truth or discourage him. And why would that statement be made to him by Mr. Turner.

To the rephrased argument there was no further objection.

Proper jury argument normally falls within one of four areas: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) response to argument of opposing counsel; and (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex. Crim. App. 1999); *Wilson v. State*, 7 S.W.3d 136, 147 (Tex. Crim. App. 1999); *Dinkins v. State*,

24

894 S.W.2d 330, 357 (Tex. Crim. App. 1995). Even when an argument exceeds the permissible bounds of these areas, such will not constitute reversible error unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts harmful to the accused. *Todd v. State*, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980); *see also Guidry*, 9 S.W.3d at 154; *Allridge v. State*, 762 S.W.2d 146, 155 (Tex. Crim. App. 1988). The remarks must have been a willful and calculated effort on the part of the prosecution to deprive the accused of a fair and impartial trial. *Cantu v. State*, 939 S.W.2d 627, 633 (Tex. Crim. App. 1997).

In the instant case, on cross-examination of the co-defendant Malagon, appellant's counsel elicited from Malagon that Malagon had met with police officers and the prosecutor and the meeting was recorded. The record then reflects:

Q: And you met with me and an investigator about a week ago, correct?

A: Yes, sir.

Q: And I asked you if I could record it, correct?

A: Yes, sir.

A: And you declined?

A: Yes, sir.

Subsequently, on re-direct examination, the prosecutor established that Malagon had met with her and with police officers and had not been threatened. The record then reflects:

25

Q: And you met also with Defense Attorney, Mr. Turner.

A: Yes, ma'am.

Q: Did he ever suggest to you that if you chose to refuse to testify that your buddy, Carlos Soto, might get off?

A: I don't remember, no.

Q: You don't remember that?

A: No.

Q: Did he ever suggest to you that if you didn't testify that there was a good chance he might get off.

A: Yes.

MS. CASNER: No other questions.

This testimony was not clarified, rebutted, or otherwise challenged. The prosecutor's jury argument was substantiated by the record. It was proper for the prosecution to summarize the evidence and draw reasonable deductions and inferences therefrom. *See Guidry,* 9 S.W.3d at 154. While appellant objected and requested an instruction, he did not obtain an instruction to the jury to *disregard* the argument. Moreover, the rephrased argument apparently suited appellant as he made no further objection. *Gardner v. State*, 730 S.W.2d 675, 698 (Tex. Crim. App. 1987). Under the circumstances, it cannot be said that the argument was "outside the record" as claimed by appellant.

For the first time on appeal, appellant contends that the prosecutor in her argument was striking at appellant over the shoulder of his counsel. *See generally* 42 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure* § 37.61, at 596-97 (Texas Practice

1995). Appellate courts have shown special concern about jury arguments that constitute uninvited and unsubstantiated accusations of improper conduct directed at a defendant's attorney. *Gomez v. State*, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985); *see also Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996). Here, however, the argument is supported by the record. Further, this complaint on appeal does not comport with any trial objection and presents nothing for review. *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Skillern v. State*, 890 S.W.2d 849, 859 (Tex. App.—Austin 1994, pet. ref'd). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex. Crim. App. 1990). The trial court did not abuse its discretion in overruling the motion for a mistrial. Point of error twelve is overruled.

The judgment is affirmed.

_____
John F. Onion, Jr., Justice

_____

Before Justices Kidd, Yeakel and Onion[*]

Affirmed

Filed: January 19, 2001

Do Not Publish

*    Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).