Gene Edward HOWLAND, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 01–96–00283–CR, 01–96–00308–CR,
01–96–00306–CR, 01–96–00307–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

March 12, 1998.

Kelly McClendon, Angleton, for appellant.

Jerome Aldrich, David Bosserman, Angleton, for appellee.

**OPINION**

NUCHIA, Justice.

In a consolidated trial, a jury found appellant, Gene Edward Howland, guilty of aggravated sexual assault of[1] and of indecency with[2] two boys. The jury assessed punish-

---

1. Cause nos. 29,189 and 29,190.

2. Cause nos. 29,191 and 29,192.

ment at 20 years imprisonment for each sexual assault and five years imprisonment for each act of indecency with a child. We affirm.

## A. Background

J.S. was 14 and C.L. was 15 at the time of the offense. J.S. met appellant and his business partner and lover, Daniel Glynn Vandeusen, in the summer of 1994. J.S. and C.L. went to work at appellant and Vandeusen's computer store after being told they could earn a computer there. Appellant and Vandeusen also informally "home-schooled" J.S. and C.L.

Over the course of a few months, appellant and Vandeusen repeatedly sodomized, fondled, showed pornographic materials to, and performed fellatio on J.S. and C.L. at various locations. J.S. and C.L.'s physical examinations revealed rectal injuries consistent with recent penetration or assault.

Appellant was indicted for the following offenses:

1. aggravated sexual assault of J.S. (sodomy), occurring on or about February 20, 1995;

2. aggravated sexual assault of C.L. (fellatio), occurring on or about February 20, 1995;

3. indecency with J.S. (touching J.S.'s genitals), occurring on or about January 15, 1995; and

4. indecency with C.L. (having C.L. touch his genitals), occurring on or about January 15, 1995.

Appellant pleaded not guilty to each indictment.

## B. Extraneous Offense Evidence

In points of error one and two, appellant complains the trial court erred in overruling his rule 403 and 404(b) objections to extraneous offense evidence elicited from J.S. and Dr. Sara O'Heron, the State's medical expert. *See* TEX.R.CRIM.EVID. 403, 404(b). Additionally, appellant argues the trial court erred in refusing to conduct a rule 403 balancing test with respect to Dr. O'Heron's testimony.

### 1. The Testimony of Other Sexual Acts

#### a. Dr. Sara O'Heron's Testimony

Doctor O'Heron, the State's first witness, examined J.S. and C.L. in March of 1995. After appellant's rule 403 and 404(b) objections were overruled, Dr. O'Heron testified (1) J.S.'s urethral culture showed positive for group B streptococcus, which is transmitted by oral sex; (2) J.S. told her appellant performed fellatio on him numerous times; (3) C.L. had rectal scarring and stretching; (4) C.L. told her that appellant and Vandeusen had repeatedly sodomized him; and (5) a culture from C.L.'s rectum tested positive for herpes. Dr. O'Heron's medical records detailed these incidents. In point of error one, appellant complains of the admission of this extraneous offense evidence.

#### b. J.S.'s Testimony

In point of error two, appellant complains the trial court erred in admitting extraneous offense evidence through J.S.'s testimony. J.S. was the second witness to testify during the State's case-in-chief. Outside the jury's presence, J.S. testified appellant rubbed his "private parts" and told J.S. he "wanted" him two or three times, starting sometime in 1994. J.S. said appellant once drove him to a parking lot, where appellant performed fellatio on him, and then to appellant's home, where appellant repeated the act. This incident occurred in the summer or fall of 1994. On February 20, 1995, appellant and Vandeusen brought J.S. and C.L. to their home, where appellant and Vandeusen showed the boys a pornographic film (in which Vandeusen performed) before sodomizing and performing fellatio on them. The trial court overruled appellant's rule 403 and 404(b) objections, and J.S. gave substantially the same testimony in the presence of the jury.

### 2. Waiver

■■■■ Any error regarding improperly admitted evidence is waived if that same evidence is admitted later without objection. *Rogers v. State*, 853 S.W.2d 29, 35 (Tex.Crim. App.1993); *Soliz v. State*, 794 S.W.2d 110, 113 (Tex.App.—Houston [1st Dist.] 1990, pet. ref'd). Appellant allowed C.L., who testified

right after J.S. and Dr. O'Heron, to testify *without objection* to the pornography, fellatio, and sodomy of both boys on February 20.[3] Therefore, any error in admitting Dr. O'Heron's earlier testimony and reports about any sexual acts performed on C.L. and J.S. at appellant's home on February 20 (or C.L.'s anal herpes or J.S.'s streptococcus) was waived.

Appellant does not challenge on appeal the admission of any of C.L.'s testimony, much of which duplicated Dr. O'Heron's testimony and reports. Therefore, the only extraneous acts about which appellant now complains and that he has not waived are (1) various acts of fellatio performed on J.S. before February 20, 1995, (2) appellant's rubbing J.S.'s "private parts" sometime in 1994, and (3) part of Dr. O'Heron's report, indicating that appellant and Vandeusen again sodomized J.S. and C.L. around February 27.

### 3. Admissibility of Remaining Extraneous Offense Testimony

■ Generally, a trial court has broad discretion in determining the admissibility of evidence, and the reviewing court should not reverse unless a clear abuse of discretion is shown. *Allridge v. State,* 850 S.W.2d 471, 492 (Tex.Crim.App.1991). As long as the trial court's ruling was at least within the zone of reasonable disagreement, we should not reverse. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g).

#### a. Article 38.37

The State argues the extraneous evidence was admissible under TEX.CODE CRIM.P.ANN. art. 38.37 (Vernon Supp.1998).[4] Article 38.37

applies "to any criminal proceeding that commences on or after the effective date of this Act, regardless of whether the offense that is the subject of the proceeding was committed before, on, or after the effective date of the Act," which was September 1, 1995. Act of June 5, 1995, 74th Leg., R.S., ch. 318, § 48(b), 1995 Tex. Gen. Laws 2748, 2749.

Appellant was indicted before the effective date of article 38.37, while trial began after its effective date. Appellant contends the date the indictment issues controls. Therefore, appellant argues, because his indictment issued before effective date of article 38.37, the article did not apply to any part of the prosecution, including trial. We disagree.

■ Our focus is first on the literal text of article 38.37. *See Tigner v. State,* 928 S.W.2d 540, 542 (Tex.Crim.App.1996). Only if the statute is ambiguous, or if its literal interpretation would lead to an absurd result, may we look to extratextual factors to determine its application. *Id.*

The statute does not define "proceeding." Accordingly, we give "proceeding" its usual meaning in common language. *See* TEX. CODE CRIM.P.ANN. art. 3.01 (Vernon 1977). The terms "proceeding" and "criminal proceeding" are very broad, encompassing all possible steps between official accusation and final disposition. *Tigner,* 928 S.W.2d at 544. Black's Law Dictionary defines "proceeding" as "including all possible steps in an action . . . all the steps or measures adopted in the prosecution or defense of an action," as well as "to describe the entire course of an action at law . . . from the issuance of the writ or filing of the complaint until the entry of a final judgment." BLACK'S LAW DICTIONARY

---

**3.** Appellant raised a rule 403 objection only after C.L. had testified to these matters.

**4.** The trial court found the extraneous offense evidence admissible under both rule 404(b) and article 38.37, which provides as follows:

> **Art. 38.37. Evidence of extraneous offenses or acts.**
> Sec. 1. This article applies to a proceeding in the prosecution of a defendant for [certain assaultive or sexual offenses], if committed against a child under 17 years of age . . .
> Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Criminal Evidence, evidence of

other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
> (1) the state of mind of the defendant and the child; and
> (2) the previous and subsequent relationship between the defendant and the child.
> . . .
> Sec. 4. This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law.

1204 (6th ed.1993). Were we to consider the term "criminal proceeding" in the application paragraph of article 38.37 in a vacuum, we *might* find it is susceptible of two meanings—(1) each individual step in a prosecution (the State's interpretation) and (2) the entire course of the prosecution, commencing with the indictment (appellant's interpretation)—and, thus, ambiguous.

However, we do not construe "criminal proceeding" in a vacuum. Section one of article 38.37 clearly states that the article applies to "a proceeding *in the prosecution* of a defendant." *See* TEX.CODE CRIM.P.ANN. art. 38.37, § 1 (Vernon Supp.1998). As used in section one, the word "proceeding" obviously means something less than a "prosecution" as a whole. Therefore, we construe "any criminal proceeding" in the application paragraph of article 38.37 with the understanding that a "proceeding" is something smaller than a prosecution. "Any criminal proceeding" would, thus, mean "all possible steps in a prosecution." *See* BLACK'S LAW DICTIONARY 1204 (6th ed.1993).

■ Moreover, the word "any" modifies "criminal proceeding" in the application paragraph. We find this indicates the Legislature's intent that article 38.37 apply to more than one proceeding, or step, in a prosecution. Accordingly, "criminal proceeding," as used in the application paragraph of article 38.37, cannot be "the entire course of the prosecution" starting with the indictment (appellant's interpretation). *See* BLACK'S LAW DICTIONARY 1204 (6th ed.1993). If the Legislature had intended for article 38.37 to apply only when the *entire process* started after the effective date, it could have signified so by having the article apply to "a prosecution" (or, at least, to "a" proceeding) that commenced before, on, or after the effective date.

■ Neither does our interpretation create an absurd result. The result is simply

that this procedural statute applied mid-way through appellant's pending criminal prosecution. This is the general rule, in the absence of legislative intent to the contrary. *See Boyle v. State,* 820 S.W.2d 122, 144 (Tex. Crim.App.1989) (op. on reh'g). Accordingly, because we find (1) "any criminal proceeding" to be clear and unambiguous and (2) our interpretation does not lead to absurd results, we may not use additional means to determine the legislative intent. *See Tigner,* 928 S.W.2d at 542.

We recognize that the only two cases considering the application paragraph of article 38.37 indicate the indictment date is determinative. In *Snellen v. State,* the Texarkana court of appeals held that article 38.37 did not apply because the indictment was issued before the article's effective date. *Snellen,* 923 S.W.2d 238, 241 (Tex.App.—Texarkana 1996, pet. ref'd). That is, "any criminal proceeding that commences" on or after the act's effective date refers to the commencement of the whole prosecution, *i.e.,* the indictment's date, as appellant now argues. However, the cases on which the *Snellen* court relied did not interpret the term "proceeding" and did not support its conclusion.[5]

In *Yzaguirre v. State,* the Amarillo court of appeals observed article 38.37 did not apply to the case because the indictments were returned before the article's effective date. *Yzaguirre,* 938 S.W.2d 129, 131 (Tex.App.—Amarillo 1996), *rev'd on other grounds,* 957 S.W.2d 38 (Tex.Crim.App.1997). The *Yzaguirre* court cited no authority for its conclusion, however.

Neither *Snellen* nor *Yzaguirre* analyzed the meaning of "any criminal proceeding" in light of the language of article 38.37, section one, or by using rules of statutory interpretation. Because we find the Legislature's clear intent to be to the contrary, we must respectfully decline to follow our sister courts of appeals.

---

**5.** The *Snellen* court relied primarily on *Barrera v. State,* in which the court held *"prosecution* is commenced" by filing a complaint or indictment. *Barrera,* 163 Tex.Crim. 132, 289 S.W.2d 285, 288 (1956). The *Snellen* court also relied on *Vasquez v. State* and *Bonner v. State,* in which the courts noted that a statute of limitations act defined

"during the pendency" as beginning with the filing of the indictment, information, or complaint. *Vasquez,* 557 S.W.2d 779, 782 (Tex.Crim. App.1977); *Bonner,* 832 S.W.2d 134, 136 (Tex. App.—Amarillo 1992, pet. ref'd). None of these cases interpreted the term "proceeding."

We find implicit support for our conclusion in *Hinds v. State. See id.,* Nos. 05–95–01520–CR and 05–95–01551–CR, slip op. at 2, 1998 WL 7064, —— S.W.2d ——, —— (Tex. App.—Dallas, Jan. 12, 1998, n.p.h.) (designated for publication in part). In *Hinds,* as here, the indictment date was apparently before the effective date of article 38.37, while trial commenced after the effective date. *See* Slip op. at 2, at ——. The *Hinds* court was not presented with an argument concerning the effective date of article 38.37. *See* Slip op. at 2, at ——. Instead, *assuming article 38.37 applied,* the court determined article 38.37 superceded rule of criminal evidence 402. Slip op. at 2, at ——. The *Hinds* opinion implies that "proceeding" means any part of a prosecution, as the State argues. *See id.*

Therefore, we hold article 38.37 applied to appellant's trial. The complained-of testimony of which appellant did not waive review includes various extraneous acts of fellatio, sexual touching, and sodomy with his child victims. Section two of article 38.37, which supersedes application of rules 402 and 404, made this testimony admissible. *See* TEX. CODE CRIM.P.ANN. art. 38.37, § 2 (Vernon supp.1998); *Hinds,* slip op. at 3, at ——. Accordingly, we overrule points of error one and two on this ground.

**b. Rule 403**

▆▆▆▆ Because appellant also objected to the complained-of testimony under rule 403, the trial court had to weigh the testimony's probativeness to see if it was substantially outweighed by the potential for unfair prejudice. *See* TEX.R.CRIM.EVID. 403; *Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App. 1997); *Massey v. State,* 933 S.W.2d 582, 586 (Tex.App.—Houston [1st Dist.] 1996, no pet.). Factors to be considered include (1) the evidence's inherent probative value, (2) its po-

tential to impress the jury in some irrational but indelible way, (3) the amount of trial time the proponent needs to develop such evidence, and (4) the proponent's need for the evidence. *Montgomery,* 810 S.W.2d at 389–90. In determining need, the trial court examines the availability of other evidence to establish the particular fact of consequence, the strength of that other evidence, and whether the fact of consequence is related to an issue in dispute. *Id.* There is a presumption that relevant evidence is more probative than prejudicial. *Santellan,* 939 S.W.2d at 169. We review for clear abuse of discretion. *Id.*

▆▆▆▆ Appellant first complains the trial court erred in refusing to conduct a rule 403 balancing test. The trial court must perform a rule 403 balancing test if requested. *See Santellan,* 939 S.W.2d at 169. However, it need not conduct a formal hearing or even announce on the record that it has mentally conducted this balancing test. *Yates v. State,* 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *Luxton v. State,* 941 S.W.2d 339, 343 (Tex.App.—Fort Worth 1997, no pet.). Here, appellant objected on rule 403 grounds after brief argument, the trial court overruled the objection, appellant then requested the trial court to conduct a rule 403 balancing test, and the trial court again denied the objection and request to balance. By overruling appellant's rule 403 objection the first time, the trial court necessarily conducted the balancing test by considering and overruling the objection. *Yates,* 941 S.W.2d at 367; *Sparks v. State,* 935 S.W.2d 462, 466 (Tex.App.—Tyler 1996, no pet.). That is, we may presume from the record before us that the trial court conducted the balancing test and found the evidence more probative than prejudicial. *Luxton,* 941 S.W.2d at 343; *Sparks,* 935 S.W.2d at 466.[6]

---

**6.** Appellant cites our opinion in *Massey v. State,* which we find distinguishable. *See id.,* 933 S.W.2d 582 (Tex.App.—Houston [1st Dist.] 1996, no pet.). In *Massey,* the defendant had made a rule 403 objection and simultaneously asked the trial court to conduct a rule 403 balancing test, which the trial court expressly refused. *Id.* at 587. Because the trial court expressly refused to conduct a rule 403 balancing test at the time it

considered the rule 403 objection, no presumption arose that the trial court implicitly conducted the balancing test merely by denying the objection. Here, in contrast, the trial court had already overruled the rule 403 objection—which decision we may imply came after a balancing test—before appellant *again* asserted his objection and expressly asked for a balancing test. The trial court did not err in refusing to conduct

Appellant next complains the trial court erred in admitting this evidence under rule 403 through the first two witnesses in its case-in-chief, before they were cross-examined. *See Montgomery*, 810 S.W.2d at 395 (indicating court not in position to make rule 403 balancing test at early stage in that case). Even if appellant is correct, the premature receipt of extraneous offense evidence may be rendered harmless by a defendant's subsequent actions at trial. *Siqueiros v. State*, 685 S.W.2d 68, 72 (Tex.Crim.App. 1985); *accord Rubio v. State*, 607 S.W.2d 498, 502 (Tex.Crim.App.1980).

■ During his case-in-chief and in rebuttal, appellant presented the expert testimony of Dr. Cox that appellant did not have a pedophile or sex offender's characteristics. Dr. Cox then explained what a pedophile's traits were. There is no indication appellant offered Dr. Cox's testimony only in response to the earlier admitted extraneous evidence; to the contrary, presenting Dr. Cox's opinion appears to have been an integral part of defense counsel's strategy. Therefore, had the complained-of testimony been offered *after* Dr. Cox testified, it would have been admissible under rule 403 to rebut his testimony.[7] TEX.R.CRIM.EVID. 404(a)(1); *Townsend v. State*, 776 S.W.2d 316, 318 (Tex. App.—Houston [1st Dist.] 1989, pet. ref'd). Here, any error in the premature admission of the complained-of testimony was rendered harmless by Dr. Cox's later testimony. *See, e.g., Siqueiros*, 685 S.W.2d at 72. The same would be true for any error in not expressly conducting a rule 403 balancing test. *Flores v. State*, 840 S.W.2d 753, 756 (Tex.App.—El Paso 1992, no pet.).

Accordingly, we hold that the admission of the complained-of evidence during the State's case-in-chief, even had it been error under rule 403 at the time, would have been cured by Dr. Cox's later testimony.

a balancing test after it had already implicitly done so upon the first objection. Our conclusion is supported by *dicta* in *Santellan v. State. See id.*, 939 S.W.2d 155, 170 n. 22 (Tex.Crim.App. 1997).

7. Applying *Montgomery*'s balancing factors, the complained-of evidence would have been highly probative to rebut Dr. Cox's testimony. Also, no other evidence would have sufficed: even had a

We overrule the remainder of points of error one and two.

## C. Ineffective Assistance of Counsel

In point of error three, appellant complains he was denied effective assistance of counsel during the guilt-innocence phase. Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), a defendant must show (1) his counsel's performance was deficient and (2) the deficient performance was so serious it prejudiced his defense. *McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996). This means appellant must prove by a preponderance of the evidence (1) counsel's performance fell below the standard of prevailing professional norms and (2) there is a reasonable probability that, but for counsel's deficiency, the trial's result would have been different. *Id.*

■ We indulge a strong presumption counsel's conduct falls within a wide range of reasonable representation. *Id.* We examine counsel's representation as a whole, although a single error may suffice to render counsel's performance ineffective. *Davis v. State*, 930 S.W.2d 765, 767 (Tex.App.—Houston [1st Dist.] 1996, pet. ref'd). An error in trial strategy will be considered inadequate representation only if counsel's actions are without any plausible basis. *Id.* If there is any plausible basis for counsel's action, we may not speculate on the reasons for that action when the record contains no evidence of them. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

First, appellant complains counsel was deficient because he objected to C.L.'s testimony under rule 403 but not rule 404(b). There was no motion for new trial or other hearing at which counsel's reasons for not raising a

State's expert testified on rebuttal that appellant had pedophiliac traits, that expert would have had to explain by referencing appellant's extraneous acts against children. Finally, while the evidence could have impressed the jury in some irrational way, we do not think the trial court would have erred in finding probative value outweighed prejudice, because appellant had opened the door to it.

rule 404(b) objection were explained. We may not speculate on that reasoning. *See Jackson,* 877 S.W.2d at 771.

■ Second, appellant complains his counsel was deficient because he "opened the door" to the State's use of remote, extraneous acts with other children by allowing his expert, Dr. Cox, to testify that pedophiles are usually involved in this conduct a long period of time. In rebuttal, the State presented additional, extraneous misconduct evidence to show appellant had engaged in pedophilia years before with other children. The record contains no indication of counsel's reasons for eliciting this testimony, and we may not speculate on them. *See Id.* In the absence of evidence that this was not part of counsel's strategy, or that counsel did not understand he was inviting error, we cannot say he was ineffective for presenting Dr. Cox's testimony. *See Heiman v. State,* 923 S.W.2d 622, 627 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd).

Third, appellant complains counsel was deficient because he did not request limiting instructions at the time Dr. O'Heron, J.S., and C.L. testified to appellant's extraneous offenses. *See* Tex.R.Crim.Evid. 105(a). Appellant concedes, however, that the trial court gave a limiting instruction on the use of extraneous offense evidence in the jury charge on guilt-innocence. Appellant agreed to this instruction. Appellant relies on *Yzaguirre v. State,* which was recently reversed. *See id.,* 938 S.W.2d at 132. *Yzaguirre* is distinguishable. The court of appeals in *Yzaguirre* found counsel ineffective because he did not object to extraneous offense evidence and never requested a limiting instruction, at the time of the evidence's admission or in the jury charge. *Id.* at 131. Here, in contrast, counsel objected under rules 403 and 404(b) and received a limiting instruction in the charge.

■ Absent something in the record explaining why counsel did not request a rule 105(a) limiting instruction during trial, we cannot say counsel's action was not sound trial strategy. *See Ryan v. State,* 937 S.W.2d 93, 104 (Tex.App.—Beaumont 1996, pet. ref'd) ("[Absent anything in the record explaining counsel's reasoning, w]e can only conclude his trial strategy may have been not to draw further attention to the extraneous offenses"); *cf. Curry v. State,* 861 S.W.2d 479, 484–85 (Tex.App.—Fort Worth 1993, pet. ref'd) (holding counsel not ineffective for not requesting limiting instruction during punishment, because instruction was requested when extraneous offense evidence was admitted and strategy may have been not to remind the jury of the evidence). We have found no case holding defense counsel ineffective because he receives a limiting instruction in the jury charge rather than asking for one during trial.[8]

Accordingly, we hold appellant has not overcome the strong presumption his counsel's complained-of actions were sound trial strategy. *See McFarland,* 928 S.W.2d at 500. We overrule point of error three.

### D. Conclusion

We affirm the judgment.

■

---

**8.** Appellant cites *Rankin v. State. See id.,* No. 0374–94, slip op. at 10, —— S.W.2d ——, —— (Tex.Crim.App., Apr. 10, 1996). The *Rankin* court, however, held the trial court must give a rule 105(a) limiting instruction *at the time it is requested* (there, when the evidence was admit- ted), rather than deferring a ruling and giving the instruction with the charge. The *Rankin* court did not hold that trial counsel would be ineffective if he did not request such a limiting instruction mid-trial.