COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-284-CR

                                        NO. 2-08-285-CR



 

 

ROGER JOHNSON                                                                APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

            FROM THE 211TH
DISTRICT COURT OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                           I.
INTRODUCTION








Appellant Roger Johnson appeals his conviction
for two counts of possession of a controlled substance with intent to deliverCcocaine
in the amount of one gram or more but less than four grams and methamphetamine
in the amount of four grams or more but less than 200 grams.[2]  We will affirm.

                                          II.  BACKGROUND

In February 2006, patrol sergeant Paul Jaworski
and officer Eric Louderback investigated Johnson=s
residence because of complaints that Johnson=s
residence had Aa lot of traffic@ coming Ain and
out@ of
it.  Investigators had also received
information from Johnson=s wife that Johnson was using
and selling drugs from his residence. 
After conducting Aspot surveillance@ on
Johnson=s
residence and observing Aa number of vehicles coming and
going,@ the
officers decided to Apull the trash to see
. . . what [they] could find.@








The officers linked multiple trash bags left for
waste management to Johnson=s
residence through mail and other publications found in the trash with Johnson=s name
and address on them and a pill bottle with Johnson=s wife=s name
printed on it.  The officers also found a
number of used and unused plastic baggies, two broken glass pipes, and almost
five grams of methamphetamine.  Jaworski
testified that these items were Aconsistent
with dealing[,] use and sales of narcotics.@  The officers then obtained a search warrant
for Johnson=s residence.

In addition to information regarding the
complaints, spot surveillance, and trash pull, the search warrant affidavit for
Johnson=s
residence alleged that Johnson, as the person who controls the residence, Ahas a
very long criminal history and number of known AKA=s. . .
. The history involves the states of Maryland, Pennsylvania and
California.  The crimes include those
involving narcotics, the manufacture and sale of weapons, robbery, assaults,
burglaries and resisting arrest . . . .@  The affidavit also refers to Johnson as AMark
[Johnson],@ AMarcus
[Johnson],@ and ARoger
[Johnson].@ 
The affidavit lists Johnson=s birth
date as March 29, 1954.

Upon execution of the search warrant, police
discovered methamphetamine and cocaine in various locations inside Johnson=s
residence, totaling 10.56 grams methamphetamine and 6.52 grams cocaine,[3]
and various drug paraphernalia.  Police
also found three guns.








Johnson was indicted in two separate counts for
possession of a controlled substance with the intent to deliverCone
count pertaining to the cocaine and the other pertaining to the
methamphetamine.  Both indictments
included an enhancement paragraph based on a 1988 robbery conviction in
California.  The cases were tried
together.

After his arrest and prior to trial, Johnson was
represented by at least four different attorneys.  Johnson testified that he fired the previous
attorneys because they had not performed satisfactorily, more specifically,
because A[t]hey
just wanted [him] to take a plea.@

On the day of jury voir dire, Johnson=s
then-retained trial counsel filed a motion to withdraw.  The record does not reflect whether the trial
court ever ruled on this motion, but Johnson=s trial
counsel continued to represent him throughout Johnson=s
trial.  Also, before voir dire began,
Johnson indicated to the court that he wanted to file handwritten motions to
suppress.  The court instructed Johnson
to give his motions to his trial counsel.








Following jury voir dire, the trial court noted
that Johnson=s motions to suppress had been
filed and would be carried with the trial, and, if necessary, the trial court
would allow evidence to be heard concerning these motions outside the jury=s
presence.  Trial counsel did not
object.  The motions to suppress alleged
that under Franks v. Delaware, the affidavit supporting the search
warrant leading to Johnson=s
ultimate arrest contained false and misleading information that, if removed
from the affidavit, would have rendered the affidavit insufficient to establish
probable cause for the search of Johnson=s
residence.  438 U.S. 154, 98 S. Ct. 2674
(1978).

After the State rested, and outside the presence
of the jury, Johnson=s trial counsel moved for an
instructed verdict, which was denied. 
The trial court then allowed trial counsel to admit evidence pertaining
to Johnson=s motions to suppress.  Trial counsel admitted into evidence
documents which he claimed showed that the police could not have picked up
Johnson=s trash
on the day they claimed.  Thus, trial
counsel argued, under Franks v. Delaware, Athe
allegation about the trash run in the search warrant affidavit [is] misleading
and would render the search warrant affidavit . . . untrustworthy,
and . . . all of the evidence [seized at Johnson=s
residence] should be suppressed on that theory.@  The trial court denied the motions to suppress.

Still outside the presence of the jury, Johnson=s trial
counsel examined Johnson on the record about his decision to not testify.  After extensive questioning by trial counsel,
the trial court also questioned Johnson: AI don=t care
what [trial counsel] told you ‑‑ or what you=ve told
[your trial counsel] or what anybody else said. 
It=s your choice.  Do you want to testify or do you not want to
testify?@  Johnson replied, ANo, sir.@








A jury found Johnson guilty on both counts and
assessed punishment at fifty-three years=
incarceration for each count.  The trial
court ordered the sentences to run concurrently.  Johnson filed a motion for new trial, prepared
by his appellate counsel, based on several grounds, including ineffective
assistance of counsel.  The trial court
conducted a hearing.  Johnson, Jaworsky,
Louderback, and Johnson=s trial counsel all testified at
the motion for new trial hearing. 
Johnson admitted into evidence his handwritten motions to suppress, a
list of questions he allegedly prepared for his trial counsel pertaining to the
indictments= enhancement paragraphs, and an
exhibit from the waste collection company that serviced Johnson=s
residence.








Johnson testified that his trial counsel had
initially refused to file his motions to suppress.  Johnson stated that his trial counsel had
told him Athat by him filing these
motions, I=m saying that everything in the
house belonged to me . . . . 
Compulsatory (sic) or something. 
It=s in that letter.@[4]  Johnson also said that there were numerous
false statements and inaccuracies that he had wanted to testify about regarding
the search warrant affidavit, including the date the police collected the
trash, the spelling of his name, his criminal history, and his date of
birth.  Johnson said that he had wanted
to testify at the motion to suppress hearing, but trial counsel=s Aperformance
of the trial up to that point forced me [to choose not to testify because] I
was scared.@ 
Johnson also said that his trial counsel had refused to introduce
evidence during the punishment phase, including documentation regarding his
drug rehabilitation, attendance sheets and milestones for alcohol and substance
abuse programs, and information from his employer.

Johnson=s trial
counsel testified that he filed various standard pretrial motions and had
examined the State=s file in Johnson=s
case.  Trial counsel said that his trial
strategy for not wanting to file Johnson=s
handwritten motions to suppress was that some of the information Johnson wanted
to address were Amatters within his personal
knowledge.@ 
Thus, trial counsel said, his advice to Johnson was to not file the
motions and avoid taking the stand where he might, through the State=s
questioning, be in the quandary of either admitting to having possessed the
drugs or denying possession and creating potential standing issues.  Trial counsel pointed out that Johnson had
signified his compliance with this tactic when he wrote, AI agree@ on
trial counsel=s memo to Johnson detailing this
reasoning.








Trial counsel further testified that he did ultimately
file the motions to suppress and, in an attempt to undermine the search warrant
affidavit, put on evidence that indicated that the police did not pick up
Johnson=s trash
on the day indicated.  Trial counsel also
said that Johnson never told him that he wanted to testify at a Franks
hearing.  Trial counsel said that it was
Johnson=s choice
to not testify during the hearing or at trial. 
Trial counsel said that he also put on punishment-mitigating evidence
through Johnson=s wife where she testified that
he was a great father, had held down a steady job, and had attempted to
rehabilitate his drug problems.  Trial
counsel stated, however, that Johnson never gave him any additional information
or documentation about his attendance sheets and milestones relating to alcohol
and substance abuse programs.








Jaworski testified that he and Louderback picked
up Johnson=s trash on Monday, February 20,
2006, at around 3:00 a.m.  Jaworski
averred that the seeming discrepancy between this pick-up time and the document
Johnson had admitted into evidenceCwhich
suggested a reported Tuesday, February 21, 2006 trash pickup by the policeCwas due
to when the paperwork was filed. Jaworski said that he did not provide names of
informants or specifically verify Johnson=s
criminal history in the search warrant affidavit because it was his
surveillance of Johnson=s residence and the items
collected from Johnson=s trash Athat led
to the probable cause for the search warrant.@  Louderback testified that he assisted
Jaworski in the trash pickup and the search of Johnson=s
residence.

At the conclusion of the hearing, the trial court
found that Johnson=s testimony was Anot
credible.@ 
The trial court denied the motions for new trial. This appeal followed.

                             III.  EFFECTIVE ASSISTANCE
OF COUNSEL

In a single point, Johnson argues that he was
denied effective assistance of counsel in two ways.  First, Johnson argues that trial counsel was
deficient by preventing him from adequately challenging the search warrant
affidavit under Franks v. Delaware. 
Second, Johnson argues that trial counsel failed Ato
zealously represent [Johnson] during the punishment phase of the proceedings.@








The Sixth Amendment to the United States
Constitution affords criminal defendants the right to reasonably effective
assistance of counsel.  U.S. Const.
amend. VI; Yarborough v. Gentry, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); Garcia
v. State, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), cert. denied,
537 U.S. 1195 (2003).  We apply a
two-pronged test to ineffective assistance of counsel claims, including
challenges concerning counsel=s
assistance at punishment.  Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); Hernandez v. State,
988 S.W.2d 770, 770 (Tex. Crim. App. 1999).








First, an appellant must show that his counsel=s
performance was deficient.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2065. 
Under this first prong, a strong presumption exists that defense counsel=s
conduct was reasonable and constituted sound trial strategy.  Strickland, 466 U.S. at 689, 104 S.
Ct. 2052.  We evaluate the totality of
the representation from counsel=s
perspective at trial, rather than counsel=s
isolated acts or omissions in hindsight. 
Gutierrez v. State, 8 S.W.3d 739, 749 (Tex. App.CAustin
1999, no pet.).  Any error in trial
strategy will be deemed inadequate representation only if counsel=s
actions lack any plausible basis.  Howland
v. State, 966 S.W.2d 98, 104 (Tex. App.CHouston
[1st Dist.] 1998), aff=d, 990
S.W.2d 274 (Tex. Crim. App. 1999).  The
fact that another attorney, including appellate counsel, might have pursued a
different course does not necessarily support a finding of ineffectiveness.  Blott v. State, 588 S.W.2d 588, 592
(Tex. Crim. App. 1979); Johnson v. State, 987 S.W.2d 79, 88 (Tex. App.CHouston
[14th Dist.] 1998, pet. ref=d).  A[C]ounsel
is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment.@  Strickland, 466 U.S. at 690, 104 S.
Ct. at 2066; see also Delrio v. State, 840 S.W.2d 443, 447 (Tex. Crim.
App. 1992) (reasoning that trial counsel is better positioned than an appellate
court to judge the pragmatism regarding significant decisions of trial strategy
in a particular case).  Our scrutiny of
counsel=s
performance must be highly deferential, and every effort must be made to
eliminate the distorting effects of hindsight. 
Strickland, 466 U.S. at 689, 104 S. Ct. at 2065.

Second, an appellant must show that the deficient
performance prejudiced the defense.  Strickland,
466 U.S. at 687, 104 S. Ct. at 2064.  The
second prong of Strickland requires a showing that counsel=s errors
were so serious that they deprived the defendant of a fair trial, i.e., a trial
whose result is reliable.  Id.  In other words, Appellant must show there is
a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id.  A reasonable probability is a probability
sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Strickland, 466 U.S. at 697, 104 S.
Ct. at 2070.

A.     Trial
Counsel=s Strategy Regarding Motions to
Suppress








In this case, there was testimony by trial
counsel offered during the motion for new trial hearing concerning counsel=s trial
strategy.  Trial counsel said that it was
his professional opinion that filing motions to suppress that would culminate
in Johnson having to testify regarding his personal knowledge of the drugs
found in his residence was Apoor
trial strategy.@ 
Trial counsel said that Johnson could have ultimately been questioned by
the State, whereby he would either confess to ownership of the drugs or deny ownership
and lose the motion under the doctrine of standing.  Trial counsel testified that an exhibit
admitted into the record by Johnson indicates that Johnson agreed with trial
counsel=s
tactic.








Furthermore, trial counsel reasoned that the only
legitimate challenge to the search warrant affidavit under Franks v.
Delaware was one that challenged the actual basis for probable causeCthe
evidence of the police department=s
independent investigation of watching Johnson=s
residence and the discovery of drugs and drug paraphernalia in Johnson=s
trash.  See State v. Delagarza,
158 S.W.3d 25, 27B28 (Tex. App.CAustin
2005, no pet.) (holding that magistrate had substantial basis for concluding
probable cause to search residence existed where, although tip concerning
suspected drug dealing came from anonymous informer of unknown reliability,
comings and goings at residence wereCin
officer=s
experienceCindicative of unlawful drug
dealing, officers retrieved trash bags left outside residence containing drug
paraphernalia, and bags tested positive for cocaine); see also State v.
Raymer, 786 S.W.2d 15, 16 (Tex. App.CDallas
1990, no pet.) (holding that affidavit in support of warrant to search
defendant=s house based upon officer=s
knowledge of contents of trash behind defendant=s
residence provided magistrate with substantial basis for determining that
illegal drugs were probably in defendant=s
house).  Trial counsel did in fact file
the motions to suppress and present evidence in an attempt to undermine the
search warrant affidavit based on this reasoning.  We hold that the record demonstrates that
there was a plausible basis for trial counsel=s
strategy and that, regarding the motion to suppress, Johnson has failed to
point to any evidence that undermines the strong presumption that his trial
counsel rendered adequate assistance and made all significant decisions in the
exercise of his reasonable professional judgment.  See Strickland, 466 U.S. at
690, 104 S. Ct. at 2066.  We overrule
this portion of Johnson=s sole point.

B.     Evidence
Presented at Punishment Phase

Johnson also argues that trial counsel was
ineffective because he failed to Azealously
represent [him] during the punishment phase@ of
trial.  Specifically, Johnson argues that
trial counsel failed to secure witnesses who could have corroborated Johnson=s
progress and achievements in employment history, drug abuse therapy, and
self-motivated rehabilitation programs such as Alcoholics Anonymous and
Narcotics Anonymous.








Johnson=s trial
counsel explained at the motion for new trial hearing that Johnson had not
provided him with any documentation regarding personal achievements nor did
Johnson provide a list of additional witnesses he wished trial counsel to
call.  Johnson did not dispute this claim
at the motion for new trial hearing. 
Trial counsel also testified that he discussed presenting mitigating
evidence at the punishment phase with Johnson. 
Trial counsel said that he advised calling Johnson=s wife
but advised against Johnson taking the stand because he believed Johnson would
appear poorly to a jury under cross-examination.

The record shows that Johnson=s trial
counsel presented evidence in the punishment phase by calling Johnson=s wife
to testify.  Johnson=s wife
testified that Johnson had always worked and provided for his family, that he
was a Agreat
father,@
that  he had been involved in
rehabilitation programs, and that she would support him after he was released
from incarceration.








Assertions of ineffective assistance of counsel
must be firmly founded in the record.  Bone
v. State, 77 S.W.3d 828, 834 (Tex. Crim. App. 2002) (holding that trial
counsel only calling a single witness and defendant at punishment phase did not
constitute ineffective assistance of counsel where evidence of what additional
witnesses would have testified to was not in record).  Johnson has not shown, to a reasonable
probability, how the additional witnesses he claims should have been called to
testify would have brought about a different result.  See Strickland, 466 U.S. at 687, 104
S. Ct. at 2064.

There is simply no evidence in the record to
support Johnson=s contention that a jury would
have assessed a lighter sentence had these alleged additional witnesses
testified on his behalf.  Johnson was
convicted of two first-degree felonies. 
The punishment range for these convictions is five to ninety-nine years=
confinement.  See Tex. Pen. Code
Ann. ' 12.32
(Vernon 2003).  The jury assessed
punishment at fifty-three years for each conviction.  Assuming without deciding that trial counsel=s
decision not to procure more testimony or to produce extra evidence in an
attempt to mitigate punishment violated the first prong of Strickland,
Johnson has not demonstrated that any prejudice resulted.  See Woodford v. Visciotti, 537 U.S.
19, 22B23, 123
S. Ct. 357, 359 (2002) (reasoning that when it is alleged that counsel
performed deficiently at the punishment phase of trial, defendant must prove
that there is a reasonable probability that, but for counsel=s
errors, the sentencing jury would have reached a more favorable penalty‑phase
verdict); see also Bone, 77 S.W.3d at 834B36.  We hold that Johnson has not demonstrated any
prejudice regarding trial counsel=s
performance during the punishment phase of trial.  We overrule this portion of Johnson=s sole
point.








                                          IV.  CONCLUSION

Having overruled Johnson=s sole
point in its entirety, we affirm the trial court=s
judgments. 

PER
CURIAM

 

PANEL:  MEIER, WALKER, and McCOY, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 18, 2009











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety
Code Ann. ' 481.112 (Vernon
2003).





[3]The State admits that
portions of these drugs were found Ain or near the purse@ of a person who was at
Johnson=s residence when the
warrant was executed.  But the State
contends, and Johnson does not dispute, that the drugs found in the Apurse were not necessary
to convict [Johnson] of the charged offenses.@





[4]Prior to trial, trial
counsel corresponded with Johnson by letter regarding the motions to
suppress.  In the letter, trial counsel
avers that filing the motions to suppress would be Apoor trial strategy@ because Johnson might
have to take the stand and possibly either admit to ownership of the drugs or
defeat standing to complain about the drugs by denying ownership.