

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

**NO. 2-08-284-CR**
**NO. 2-08-285-CR**

ROGER JOHNSON                                                 APPELLANT

V.

THE STATE OF TEXAS                                              STATE

------------

FROM THE 211TH DISTRICT COURT OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Roger Johnson appeals his conviction for two counts of possession of a controlled substance with intent to deliver—cocaine in the

------------

[1] *See* Tex. R. App. P. 47.4.

amount of one gram or more but less than four grams and methamphetamine in the amount of four grams or more but less than 200 grams.[2] We will affirm.

## II. BACKGROUND

In February 2006, patrol sergeant Paul Jaworski and officer Eric Louderback investigated Johnson's residence because of complaints that Johnson's residence had "a lot of traffic" coming "in and out" of it. Investigators had also received information from Johnson's wife that Johnson was using and selling drugs from his residence. After conducting "spot surveillance" on Johnson's residence and observing "a number of vehicles coming and going," the officers decided to "pull the trash to see . . . what [they] could find."

The officers linked multiple trash bags left for waste management to Johnson's residence through mail and other publications found in the trash with Johnson's name and address on them and a pill bottle with Johnson's wife's name printed on it. The officers also found a number of used and unused plastic baggies, two broken glass pipes, and almost five grams of methamphetamine. Jaworski testified that these items were "consistent with

---

[2] *See* Tex. Health & Safety Code Ann. § 481.112 (Vernon 2003).

dealing[,] use and sales of narcotics." The officers then obtained a search warrant for Johnson's residence.

In addition to information regarding the complaints, spot surveillance, and trash pull, the search warrant affidavit for Johnson's residence alleged that Johnson, as the person who controls the residence, "has a very long criminal history and number of known AKA's. . . . The history involves the states of Maryland, Pennsylvania and California. The crimes include those involving narcotics, the manufacture and sale of weapons, robbery, assaults, burglaries and resisting arrest . . . ." The affidavit also refers to Johnson as "Mark [Johnson]," "Marcus [Johnson]," and "Roger [Johnson]." The affidavit lists Johnson's birth date as March 29, 1954.

Upon execution of the search warrant, police discovered methamphetamine and cocaine in various locations inside Johnson's residence, totaling 10.56 grams methamphetamine and 6.52 grams cocaine,[3] and various drug paraphernalia. Police also found three guns.

_____

[3] The State admits that portions of these drugs were found "in or near the purse" of a person who was at Johnson's residence when the warrant was executed. But the State contends, and Johnson does not dispute, that the drugs found in the "purse were not necessary to convict [Johnson] of the charged offenses."

Johnson was indicted in two separate counts for possession of a controlled substance with the intent to deliver—one count pertaining to the cocaine and the other pertaining to the methamphetamine. Both indictments included an enhancement paragraph based on a 1988 robbery conviction in California. The cases were tried together.

After his arrest and prior to trial, Johnson was represented by at least four different attorneys. Johnson testified that he fired the previous attorneys because they had not performed satisfactorily, more specifically, because "[t]hey just wanted [him] to take a plea."

On the day of jury voir dire, Johnson's then-retained trial counsel filed a motion to withdraw. The record does not reflect whether the trial court ever ruled on this motion, but Johnson's trial counsel continued to represent him throughout Johnson's trial. Also, before voir dire began, Johnson indicated to the court that he wanted to file handwritten motions to suppress. The court instructed Johnson to give his motions to his trial counsel.

Following jury voir dire, the trial court noted that Johnson's motions to suppress had been filed and would be carried with the trial, and, if necessary, the trial court would allow evidence to be heard concerning these motions outside the jury's presence. Trial counsel did not object. The motions to suppress alleged that under *Franks v. Delaware*, the affidavit supporting the

4

search warrant leading to Johnson's ultimate arrest contained false and misleading information that, if removed from the affidavit, would have rendered the affidavit insufficient to establish probable cause for the search of Johnson's residence. 438 U.S. 154, 98 S. Ct. 2674 (1978).

After the State rested, and outside the presence of the jury, Johnson's trial counsel moved for an instructed verdict, which was denied. The trial court then allowed trial counsel to admit evidence pertaining to Johnson's motions to suppress. Trial counsel admitted into evidence documents which he claimed showed that the police could not have picked up Johnson's trash on the day they claimed. Thus, trial counsel argued, under *Franks v. Delaware*, "the allegation about the trash run in the search warrant affidavit [is] misleading and would render the search warrant affidavit . . . untrustworthy, and . . . all of the evidence [seized at Johnson's residence] should be suppressed on that theory." The trial court denied the motions to suppress.

Still outside the presence of the jury, Johnson's trial counsel examined Johnson on the record about his decision to not testify. After extensive questioning by trial counsel, the trial court also questioned Johnson: "I don't care what [trial counsel] told you -- or what you've told [your trial counsel] or what anybody else said. It's your choice. Do you want to testify or do you not want to testify?" Johnson replied, "No, sir."

5

A jury found Johnson guilty on both counts and assessed punishment at fifty-three years' incarceration for each count. The trial court ordered the sentences to run concurrently. Johnson filed a motion for new trial, prepared by his appellate counsel, based on several grounds, including ineffective assistance of counsel. The trial court conducted a hearing. Johnson, Jaworsky, Louderback, and Johnson's trial counsel all testified at the motion for new trial hearing. Johnson admitted into evidence his handwritten motions to suppress, a list of questions he allegedly prepared for his trial counsel pertaining to the indictments' enhancement paragraphs, and an exhibit from the waste collection company that serviced Johnson's residence.

Johnson testified that his trial counsel had initially refused to file his motions to suppress. Johnson stated that his trial counsel had told him "that by him filing these motions, I'm saying that everything in the house belonged to me . . . . Compulsatory (sic) or something. It's in that letter."[4] Johnson also said that there were numerous false statements and inaccuracies that he had wanted to testify about regarding the search warrant affidavit, including the

---

[4] Prior to trial, trial counsel corresponded with Johnson by letter regarding the motions to suppress. In the letter, trial counsel avers that filing the motions to suppress would be "poor trial strategy" because Johnson might have to take the stand and possibly either admit to ownership of the drugs or defeat standing to complain about the drugs by denying ownership.

date the police collected the trash, the spelling of his name, his criminal history, and his date of birth. Johnson said that he had wanted to testify at the motion to suppress hearing, but trial counsel's "performance of the trial up to that point forced me [to choose not to testify because] I was scared." Johnson also said that his trial counsel had refused to introduce evidence during the punishment phase, including documentation regarding his drug rehabilitation, attendance sheets and milestones for alcohol and substance abuse programs, and information from his employer.

Johnson's trial counsel testified that he filed various standard pretrial motions and had examined the State's file in Johnson's case. Trial counsel said that his trial strategy for not wanting to file Johnson's handwritten motions to suppress was that some of the information Johnson wanted to address were "matters within his personal knowledge." Thus, trial counsel said, his advice to Johnson was to not file the motions and avoid taking the stand where he might, through the State's questioning, be in the quandary of either admitting to having possessed the drugs or denying possession and creating potential standing issues. Trial counsel pointed out that Johnson had signified his compliance with this tactic when he wrote, "I agree" on trial counsel's memo to Johnson detailing this reasoning.

7

Trial counsel further testified that he did ultimately file the motions to suppress and, in an attempt to undermine the search warrant affidavit, put on evidence that indicated that the police did not pick up Johnson's trash on the day indicated. Trial counsel also said that Johnson never told him that he wanted to testify at a *Franks* hearing. Trial counsel said that it was Johnson's choice to not testify during the hearing or at trial. Trial counsel said that he also put on punishment-mitigating evidence through Johnson's wife where she testified that he was a great father, had held down a steady job, and had attempted to rehabilitate his drug problems. Trial counsel stated, however, that Johnson never gave him any additional information or documentation about his attendance sheets and milestones relating to alcohol and substance abuse programs.

Jaworski testified that he and Louderback picked up Johnson's trash on Monday, February 20, 2006, at around 3:00 a.m. Jaworski averred that the seeming discrepancy between this pick-up time and the document Johnson had admitted into evidence—which suggested a reported Tuesday, February 21, 2006 trash pickup by the police—was due to when the paperwork was filed. Jaworski said that he did not provide names of informants or specifically verify Johnson's criminal history in the search warrant affidavit because it was his surveillance of Johnson's residence and the items collected from Johnson's

8

trash "that led to the probable cause for the search warrant." Louderback testified that he assisted Jaworski in the trash pickup and the search of Johnson's residence.

At the conclusion of the hearing, the trial court found that Johnson's testimony was "not credible." The trial court denied the motions for new trial. This appeal followed.

### III. EFFECTIVE ASSISTANCE OF COUNSEL

In a single point, Johnson argues that he was denied effective assistance of counsel in two ways. First, Johnson argues that trial counsel was deficient by preventing him from adequately challenging the search warrant affidavit under *Franks v. Delaware*. Second, Johnson argues that trial counsel failed "to zealously represent [Johnson] during the punishment phase of the proceedings."

The Sixth Amendment to the United States Constitution affords criminal defendants the right to reasonably effective assistance of counsel. U.S. Const. amend. VI; *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 4 (2003); *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003). We apply a two-pronged test to ineffective assistance of counsel claims, including challenges concerning counsel's assistance at punishment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052,

9

2064 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

First, an appellant must show that his counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2065. Under this first prong, a strong presumption exists that defense counsel's conduct was reasonable and constituted sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. We evaluate the totality of the representation from counsel's perspective at trial, rather than counsel's isolated acts or omissions in hindsight. *Gutierrez v. State*, 8 S.W.3d 739, 749 (Tex. App.—Austin 1999, no pet.). Any error in trial strategy will be deemed inadequate representation only if counsel's actions lack any plausible basis. *Howland v. State*, 966 S.W.2d 98, 104 (Tex. App.—Houston [1st Dist.] 1998), *aff'd*, 990 S.W.2d 274 (Tex. Crim. App. 1999). The fact that another attorney, including appellate counsel, might have pursued a different course does not necessarily support a finding of ineffectiveness. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Johnson v. State*, 987 S.W.2d 79, 88 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066; *see also Delrio v. State*, 840 S.W.2d 443, 447 (Tex. Crim. App. 1992) (reasoning

10

that trial counsel is better positioned than an appellate court to judge the pragmatism regarding significant decisions of trial strategy in a particular case). Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

Second, an appellant must show that the deficient performance prejudiced the defense. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *Id.* In other words, Appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. *Strickland,* 466 U.S. at 697, 104 S. Ct. at 2070.

### A.    Trial Counsel's Strategy Regarding Motions to Suppress

In this case, there was testimony by trial counsel offered during the motion for new trial hearing concerning counsel's trial strategy. Trial counsel said that it was his professional opinion that filing motions to suppress that

11

would culminate in Johnson having to testify regarding his personal knowledge of the drugs found in his residence was "poor trial strategy." Trial counsel said that Johnson could have ultimately been questioned by the State, whereby he would either confess to ownership of the drugs or deny ownership and lose the motion under the doctrine of standing. Trial counsel testified that an exhibit admitted into the record by Johnson indicates that Johnson agreed with trial counsel's tactic.

Furthermore, trial counsel reasoned that the only legitimate challenge to the search warrant affidavit under *Franks v. Delaware* was one that challenged the actual basis for probable cause—the evidence of the police department's independent investigation of watching Johnson's residence and the discovery of drugs and drug paraphernalia in Johnson's trash. *See State v. Delagarza*, 158 S.W.3d 25, 27–28 (Tex. App.—Austin 2005, no pet.) (holding that magistrate had substantial basis for concluding probable cause to search residence existed where, although tip concerning suspected drug dealing came from anonymous informer of unknown reliability, comings and goings at residence were—in officer's experience—indicative of unlawful drug dealing, officers retrieved trash bags left outside residence containing drug paraphernalia, and bags tested positive for cocaine); *see also State v. Raymer*, 786 S.W.2d 15, 16 (Tex. App.—Dallas 1990, no pet.) (holding that affidavit

12

in support of warrant to search defendant's house based upon officer's knowledge of contents of trash behind defendant's residence provided magistrate with substantial basis for determining that illegal drugs were probably in defendant's house). Trial counsel did in fact file the motions to suppress and present evidence in an attempt to undermine the search warrant affidavit based on this reasoning. We hold that the record demonstrates that there was a plausible basis for trial counsel's strategy and that, regarding the motion to suppress, Johnson has failed to point to any evidence that undermines the strong presumption that his trial counsel rendered adequate assistance and made all significant decisions in the exercise of his reasonable professional judgment. *See Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066. We overrule this portion of Johnson's sole point.

### B. Evidence Presented at Punishment Phase

Johnson also argues that trial counsel was ineffective because he failed to "zealously represent [him] during the punishment phase" of trial. Specifically, Johnson argues that trial counsel failed to secure witnesses who could have corroborated Johnson's progress and achievements in employment history, drug abuse therapy, and self-motivated rehabilitation programs such as Alcoholics Anonymous and Narcotics Anonymous.

13

Johnson's trial counsel explained at the motion for new trial hearing that Johnson had not provided him with any documentation regarding personal achievements nor did Johnson provide a list of additional witnesses he wished trial counsel to call. Johnson did not dispute this claim at the motion for new trial hearing. Trial counsel also testified that he discussed presenting mitigating evidence at the punishment phase with Johnson. Trial counsel said that he advised calling Johnson's wife but advised against Johnson taking the stand because he believed Johnson would appear poorly to a jury under cross-examination.

The record shows that Johnson's trial counsel presented evidence in the punishment phase by calling Johnson's wife to testify. Johnson's wife testified that Johnson had always worked and provided for his family, that he was a "great father," that he had been involved in rehabilitation programs, and that she would support him after he was released from incarceration.

Assertions of ineffective assistance of counsel must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 834 (Tex. Crim. App. 2002) (holding that trial counsel only calling a single witness and defendant at punishment phase did not constitute ineffective assistance of counsel where evidence of what additional witnesses would have testified to was not in record). Johnson has not shown, to a reasonable probability, how the

14

additional witnesses he claims should have been called to testify would have brought about a different result.  *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

There is simply no evidence in the record to support Johnson's contention that a jury would have assessed a lighter sentence had these alleged additional witnesses testified on his behalf.  Johnson was convicted of two first-degree felonies.  The punishment range for these convictions is five to ninety-nine years' confinement.  *See* Tex. Pen. Code Ann. § 12.32 (Vernon 2003).  The jury assessed punishment at fifty-three years for each conviction.  Assuming without deciding that trial counsel's decision not to procure more testimony or to produce extra evidence in an attempt to mitigate punishment violated the first prong of *Strickland*, Johnson has not demonstrated that any prejudice resulted.  *See Woodford v. Visciotti*, 537 U.S. 19, 22–23, 123 S. Ct. 357, 359 (2002) (reasoning that when it is alleged that counsel performed deficiently at the punishment phase of trial, defendant must prove that there is a reasonable probability that, but for counsel's errors, the sentencing jury would have reached a more favorable penalty-phase verdict); *see also Bone*, 77 S.W.3d at 834–36.  We hold that Johnson has not demonstrated any prejudice regarding trial counsel's performance during the punishment phase of trial.  We overrule this portion of Johnson's sole point.

15

**IV. CONCLUSION**

Having overruled Johnson's sole point in its entirety, we affirm the trial court's judgments.

PER CURIAM

PANEL: MEIER, WALKER, and McCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 18, 2009